*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 04a0422p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

SANDRA HUMENNY,

        *Plaintiff-Appellant,*

    *v.*

GENEX CORPORATION, INC.; CAROL VALENTIC,

        *Defendants-Appellees.*

No. 03-1953

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 02-72497—Robert H. Cleland, District Judge.

Argued: October 29, 2004

Decided and Filed: December 8, 2004

Before: KENNEDY and GILMAN, Circuit Judges; HOOD, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Timothy K. McConaghy, HARDY, LEWIS & PAGE, Birmingham, Michigan, for Appellant. Debra M. McCulloch, DYKEMA GOSSETT, Bloomfield Hills, Michigan, for Appellees. **ON BRIEF:** Timothy K. McConaghy, HARDY, LEWIS & PAGE, Birmingham, Michigan, for Appellant. Debra M. McCulloch, DYKEMA GOSSETT, Bloomfield Hills, Michigan, Kathleen McCree Lewis, Mary J. Fair-Matthews, DYKEMA GOSSETT, Detroit, Michigan, for Appellees.

_____

## OPINION

_____

JOSEPH M. HOOD, District Judge. Plaintiff-Appellant brought this action against Defendants-Appellees alleging employment discrimination arising from violations of federal and state law. The district court below granted summary judgment in favor of Defendants-Appellees and dismissed all of Plaintiff's claims. Appellant argues that the district court erred in concluding that Appellant had not stated viable claims for FMLA retaliation, gender discrimination, public policy retaliation, and intentional infliction of emotional distress. For the reasons set forth below, we **AFFIRM** the decision of the district court.

_____

[*]The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff-Appellant Sandra Humenny began her employment with Defendant-Appellee GENEX Corp., Inc. ("GENEX") in July of 1992 as an Area Sales Manager ("ASM") for the midwest region. In her position as ASM, Appellant sold GENEX services directly to GENEX customers and reported to a Regional Sales Manager ("RSM"). In November of 1998, GENEX hired Tom Sebold ("Sebold") as an RSM in the midwest region. The following December, Appellant was promoted to an RSM position with significantly increased compensation. In her new position, Appellant's supervisor was Appellee Carol Valentic ("Valentic"), Regional Vice President of GENEX. Valentic reported directly to the Vice President of GENEX, Delphia Frisch ("Frisch").

Appellees allege that, as early as the fall of 2000, Frisch and Valentic began discussing plans for the reorganization of the midwest region of GENEX and the elimination of one of the RSM positions. Frisch and Valentic claim that, by August and September of 2001, they decided to eliminate one of the RSM positions and replace it with a Regional Account Executive ("RAE") position. Appellees allege that they compared the performances of Sebold and Appellant and decided to retain Sebold in the RSM position and to transfer Appellant to the RAE position. Appellant, however, alleges that she had always performed better than Sebold in the RSM position.

October 2nd to 4th of 2001, GENEX held its annual regional meeting in Chicago, Illinois. Appellant was unable to attend the meeting because of a personal emergency regarding her ailing mother. Following the meeting, Valentic contacted Appellant to express concerns about the performances of two of Appellant's ASMs. During that conversation, Valentic asked Appellant to develop a 30-day plan for each of Appellant's ASMs. Appellant alleges that Valentic told her to either take a full-time unprotected leave or perform her job at 100% including overnight travel, or she would be fired. Appellees contend that Valentic stated only that Appellant should consider taking a leave of absence to care for her ill mother and that Marie Beppel ("Beppel"), Senior Vice President of Human Resources, could discuss with Appellant the available leave options. Appellees further allege that travel had always been a requirement for the job, which Appellant denies.

Appellant alleges that, on November 5, 2001, she overheard a conversation between Valentic and Frisch in which Valentic stated that she could not stand to see Appellant anymore and that Appellant could not continue to disparage the company because of Valentic's response to Appellant's requests for leave. Appellant further states that she heard Valentic ask Frisch whether Frisch was all right with Valentic's "plan." The next day, Valentic called Appellant to her office and informed Appellant that she was being transferred to the RAE position. On November 7, 2004, Appellant asked Valentic for a job description of the RAE position. Appellant alleges that Valentic refused the request and told Appellant that Valentic had serious doubts about working with Appellant.

Appellant accepted the RAE position, and on November 12, 2001, the first day in her new position, Appellant went on sick leave for her own illness. On February 4, 2002, Appellant was informed that her leave would terminate on February 11, 2002. Following termination of her leave period, Appellant submitted a request for an extension, which included medical certification that her doctor would evaluate her ability to work in 30 days. Appellees denied Appellant's request allegedly because the midwest region was already 400 cases below its yearly goal and because GENEX lost $150,000 in revenue in January of 2002. On February 13, 2002, Appellant was terminated effective February 15, 2002. On the effective date of her termination, GENEX offered Appellant a severance package comprised of her 2001 bonus and 37 unused short-term disability days.

Plaintiff-Appellant filed suit in Michigan state court on May 24, 2002, and filed an amended complaint on June 14, 2002. Defendants removed the case to federal district court based upon federal question jurisdiction and moved for summary judgment on all of Appellant's claims. On June 27, 2003, the

district court entered an order granting summary judgment in favor of Defendants and dismissing all of Plaintiff's claims with prejudice.  Plaintiff then sought this appeal.

## II.  STANDARD OF REVIEW

A district court's grant of summary judgment is reviewed *de novo*.  *Sperle v.  Mich.  Dep't of Corr.*, 297 F.3d 483, 490 (6th Cir.  2002).  The court must construe all reasonable factual inferences in favor of the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  To withstand summary judgment, the nonmoving party must present sufficient evidence to create a genuine issue of material fact.  *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990).  A mere scintilla of evidence is insufficient; rather, "there must be evidence on which the jury could reasonably find for the [nonmovant]."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## III.  DISCUSSION

### A.      The FMLA's "Eligible Employee" Requirement

The FMLA excludes from coverage "any employee of an employer who is employed at a worksite at which such employer employs less than 50 employees if the total number of employees employed by that employer within 75 miles of that worksite is less than 50."  29 U.S.C. § 2611(2)(B)(ii).  Where a plaintiff does not qualify as an "eligible employee," the court lacks jurisdiction to  decide the FMLA case.  *Douglas v. E.G. Baldwin & Assocs., Inc.*, 150 F.3d 604, 607 (6th Cir. 1998).  Plaintiff-Appellant argues that the "eligible employee" requirement should not be applied where an employee brings a retaliation claim under the FMLA rather than merely alleging entitlement to FMLA leave.  Appellant concedes that she was not entitled to rights under the FMLA because Defendant-Appellee GENEX employed fewer than 50 employees within 75 miles of Appellant's worksite.  Rather, Appellant claims that Appellees demoted and eventually dismissed her for "attempting" to assert rights to which she, in good faith, believed she was entitled under the FMLA.  Accordingly, Appellant argues that she should be able to assert a retaliation claim against Appellees.

Appellant notes that both the First and Eleventh Circuits have held that an employee who is not eligible for leave under the FMLA nonetheless may state a claim for FMLA retaliation.  However, as the district court correctly concluded, the cases to which Appellant cites for this proposition are not on point. The First and Eleventh Circuit cases held only that a former employee may state a claim for retaliation where the former employer refuses to re-hire the employee for exercising FMLA leave rights while employed.  *Smith v. Bellsouth Telecommunications, Inc.*, 273 F.3d 1303, 1312-13 (11th Cir. 2001); *Duckworth v. Pratt & Whitney, Inc.*, 152 F.3d 1, 9-11 (1st Cir. 1998).  In both cases, the plaintiffs qualified as "eligible employees" at the time they took FMLA leave.  *Smith*, 273 F.3d at 1305; *Duckworth*, 152 F.3d at 3.  Appellant in this case never qualified for FMLA leave.

Appellant further argues that the language of the FMLA retaliation provisions and the regulations passed in accordance with the FMLA lend support to her argument.  The FMLA retaliation provisions state:

> (1)      Exercise of rights
>
> It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.

(2)      Discrimination

It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

29 U.S.C. § 2615(a)(1)-(2). Appellant argues that the statute's use of the words "employee" and "individual" indicates that these retaliation provisions apply regardless of whether an employee is eligible for leave under the statute. However, a close reading of the statute reveals that the retaliation provisions prohibit employers from retaliating based on the exercise of a "right" under the statute. The regulations provide similar protection by prohibiting retaliation based on the exercise of "any rights provided by the Act." 29 C.F.R. § 825.220(a)(1). Because Appellant is not an eligible employee, Appellant has never exercised or attempted to exercise any "rights" provided to her by the FMLA.

This court has already held that in an FMLA retaliation case, even where jurisdiction is based on diversity, if the plaintiff does not qualify as an "eligible employee," the plaintiff does not state a claim for relief under the FMLA. *Coen v. Sybron Dental Specialties*, 1 Fed.Appx. 386, 389 (6th Cir. 2001)(unpublished). District courts within the Sixth Circuit have also applied this rule to FMLA retaliation claims. *See Holliday v. Vacationland Fed. Credit Union,* 2004 WL 903902 (N.D. Ohio 2004)(unpublished); *Grimsley v. Fiesta Salons, Inc.*, 2003 WL 117985 (E.D. Mich. 2003)(unpublished). In fact, one court in particular stated, "'To sustain an FMLA retaliation claim, the plaintiff must allege that [she] was an eligible employee at the time [she] took [her] leave.'" *Rosania v. Taco Bell of America, Inc.*, 303 F. Supp. 2d 878, 887 (N.D. Ohio 2004)(unpublished)(quoting *Delgado v. Solopak Pharms., Inc.*, 1997 WL 403703, at *3-4 (N.D. Ill. 1997))(emphasis omitted)(unpublished). Although the *Rosania* court addressed the question of when the employee must have been eligible to assert a retaliation claim rather than whether the employee had to be eligible, the court did not indicate in any way that an exception to the requirement should apply in retaliation claims. This Court finds that the FMLA's "eligible employee" requirement applies in all FMLA cases, including retaliation cases. Accordingly, Appellant has failed to state a claim under the statute.[1]

## B.      Gender Discrimination Claim

Appellant alleges that Appellees discriminated against her on the basis of gender in violation of Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws Ann. § 37.2101. Cases brought pursuant to the ELCRA are analyzed under the same evidentiary framework used in Title VII cases. *Hall v. State Farm Ins. Co.*, 18 F. Supp. 2d 751, 766 (E.D. Mich. 1998). To make out a prima facie case for gender discrimination, a plaintiff must show that she was (1) a member of the protected class, (2) subject to an adverse employment action, (3) qualified for the job, and (4) treated differently than similarly situated male employees for the same or similar conduct. *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 928 (6th Cir. 1999). If the plaintiff establishes a prima facie case of gender discrimination, the burden of production shifts to the defendant to provide a legitimate, non-discriminatory reason for the employment action. *Ensley-Gaines v. Runyon*, 100 F.3d 1220, 1224 (6th Cir. 1996). If the defendant provides a legitimate, non-discriminatory reason, the plaintiff must then produce evidence that the defendant's proffered reason is a pretext for discrimination. *Id.*

---

[1]Because Appellant has not stated a claim for FMLA retaliation, the Court need not address whether Appellant produced direct evidence of retaliation.

### 1.    *Prima Facie Case*

To show that she was treated differently than similarly situated males for the same or similar conduct, Appellant must show that "all relevant aspects" of her employment situation are "nearly identical" to those of the alleged similarly situated male employees. *Id.* at 929. Moreover, to be deemed "similarly situated," the individuals with whom Appellant compares herself "'must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Gray v. Toshiba Am. Consumer Products, Inc.*, 263 F.3d 595, 599 (6th Cir. 2001)(quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)).

Appellant contends that Mark Libants ("Libants") and Paul Bode ("Bode") were treated more favorably than her in that they were allowed to take time off from work to care for their sick parents. However, Appellant has failed to show that the relevant aspects of Libants's and Bode's employment situations were nearly identical to her circumstances. In fact, as the district court correctly concluded, Libants's and Bode's situations were entirely dissimilar to the Plaintiff's situation. Libants and Bode occupied different positions at GENEX with different job descriptions and never requested leaves of absence to care for their ill parents. Instead, Libants used vacation and personal time, and Bode used vacation and personal time as well as sick days and bereavement days. Accordingly, Appellant failed to satisfy this prong of the prima facie case for gender discrimination.

### 2.    *Evidence of Pretext*

The district court found that, even if Appellant made a prima facie showing that she was discriminated against on the basis of gender, she failed to establish that Appellees' proffered reason for the employment action against Appellant was a pretext for discrimination. However, because Appellant did not establish a prima facie case, this Court need not address the issue of pretext.

## C.    **Public Policy Retaliation**

Michigan courts have recognized a "public policy" exception to the general rule that an at-will employee may be terminated at any time for any reason. *Suchodolski v. Mich. Consol. Gas Co.*, 316 N.W.2d 710, 711 (Mich. 1982). An at-will employee's discharge violates public policy if the employee is discharged (1) in violation of an "explicit legislative statement[] prohibiting the discharge, discipline, or other adverse treatment of employees who act in accordance with a statutory right or duty," (2) for "failure or refusal to violate a law in the course of employment," or (3) for the "exercise of a right conferred by a well-established legislative enactment." *Id.* at 711-12. Michigan courts, however, have limited this "public policy" exception by holding that "[a]s a general rule, the remedies provided by statute for violation of a right having no common-law counterpart are exclusive, not cumulative." *Dudewicz v. Norris-Schmid, Inc.*, 503 N.W.2d 645, 649 (Mich. Ct. App. 1993).

Appellees argue that, because the FMLA contains an anti-retaliation provision, the remedies provided by the FMLA are exclusive, and Appellant's public policy retaliation claim must fail. Appellant contends that Appellees cannot argue that the FMLA provides Appellant's exclusive remedy while still maintaining that Appellant's FMLA claim fails as a matter of law. The Court recognizes that some Michigan decisions have held that where a plaintiff is unable to make out a claim under the statute upon which the plaintiff bases a public policy claim, the statute does not serve as the plaintiff's exclusive remedy. *See, e.g.*, *Driver v. Hanley*, 575 N.W.2d 31, 36 (Mich. Ct. App. 1997); *Andonian v. AutoAlliance Int'l, Inc.*, 2003 WL 2010745, at *18 (E.D. Mich. Feb. 25, 2003)(unpublished).

However, this Court is of the opinion that such an argument misconstrues the first issue that must be addressed in a public policy claim. The first issue is whether the plaintiff, or Appellant in this case, has identified a well-established legislative enactment that addresses the particular conduct at issue. If not, a Court should never reach the question of whether the particular statute provides a remedy to plaintiffs who

allege violations of the statute.  In this case, Appellant has identified the FLMA as such a legislative enactment.  However, the problem with Appellant's argument is, as the district court properly recognized, the statute is not applicable to her. Appellant is not an eligible employee and cannot even bring suit under the FMLA, the FMLA cannot be said to represent a public policy that should protect Appellant from Appellees' purported conduct.

Appellant identifies several additional statutes upon which she bases her public policy retaliation claim.[2]  Appellant argues that these statutes collectively establish that "the public policy in Michigan protects employees when they interact with their employer regarding their statutory rights as well as when they oppose, in good faith, a perceived violation of their statutory rights."  Brief for Appellant at 70-71. However, although the statutes identified by Appellant contain anti-retaliation provisions, none of the statutes prohibits the specific conduct at issue in this case.  Accordingly, the Court need not address whether any of these statutes provide a remedy for the conduct the statutes proscribe.  Because Appellant has failed to identify any well-established legislative enactment that addresses the particular conduct at issue in this case, Appellant's public policy claim must fail.

## D.      Intentional Infliction of Emotional Distress

Appellant argues in her brief that the district court erred in dismissing her claim for intentional infliction of emotional distress.  However, under Michigan law, the tort of intentional infliction of emotional distress is reserved for conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Graham v. Ford*, 604 N.W.2d 713, 716 (Mich. Ct. App. 1999).  Appellant alleges that Appellees' conduct of requiring Appellant to travel overnight while Appellant was caring for her ill mother and discharging Appellant two days before Appellant received her yearly bonus of over $18,000 constitutes intentional infliction of emotional distress.  The Court finds this evidence does not constitute conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.*  It is, therefore, insufficient to establish a claim for intentional infliction of emotional distress.

## IV.  CONCLUSION

For the reasons set forth above, the decision of the district court is **AFFIRMED.**

---

[2]These statutes include the ELCRA; the Persons with Disabilities Civil Rights Act, Mich. Comp. Laws Ann. §§ 37.1101 *et seq.*; the Michigan Occupational Safety and Health Act, Mich. Comp. Laws Ann. § 408.1065; and the Workers' Disability Compensation Act, Mich. Comp. Laws Ann. § 418.301(11).