CAVANAGH, J.
(concurring). I concur in full with the majority opinion, including its conclusion that the clean indoor air regulation (CIAR) should be upheld. I would hold that the CIAR, including §§ 1010(F), 1011, and 1012(F), is within the scope of the authority delegated by the state constitution and the applicable statutes to the Northwest Michigan Community Health Agency (NMCHA) and the county boards of commissioners. I further agree that the non-retaliation provision of the CIAR, § 1011, falls within the public-policy exception to the common-law at-will employment doctrine. I write separately in order to clarify my views on the proper application of Suchodolski v Michigan Consolidated Gas Co, 412 Mich 692; 316 NW2d 710 (1982), to this case and to further respond to Justice MARKMAN’s opinion.
I. NON-RETALIATION PROVISION
A. SUCHODOLSKI ANALYSIS
This Court asked the parties to address whether the non-retaliation provision in the CIAR, § 1011, is consistent with Suchodolski. McNeil v Charlevoix Co, 482 Mich 1014, 1014-1015 (2008).[1] 1 think that § 1011 of the CIAR falls squarely within Suchodolski’s first ex *89 ample of a public policy creating an exception to the general rule of at-will employment.
Under the common law, there is a general rule of at-will employment, meaning that “[i]n general, in the absence of a contractual basis for holding otherwise, either party to an employment contract for an indefinite term may terminate it at any time for any, or no, reason.” Suchodolski, 412 Mich at 694-695. As discussed in the majority opinion, Suchodolski recognized that, under the common law, there is an exception to the general at-will rule when the basis for termination is contrary to public policy. Id. at 695. Suchodolski stated that “an exception has been recognized to [the common-law at-will employment] rule, based on the principle that some grounds for discharging an employee are so contrary to public policy as to be actionable.” Id. In addition to explaining the general public-policy exception, Suchodolski provided three examples of public policies that fall within the exception. Id. at 695-696.[2]
I would hold that § 1011 of the CIAR falls within the first example provided in Suchodolski of a public policy that creates an exception to the general rule of at-will employment. The first Suchodolski example is an explicit legislative statement that prohibits the discharge of an employee in retaliation for that employee’s acting in accordance with a legally recognized right or duty. Suchodolski, 412 Mich at 695. This is precisely what § 1011 is. Section 1011 provides that “[n]o person or employer shall discharge, refuse to hire or in any *90 manner retaliate against any employee, applicant for employment or customer because such employee, applicant or customer exercises any right to a smoke-free environment afforded by this regulation.” The county boards of commissioners that organized the NMCHA adopted the CIAR by a majority vote. They are local legislative bodies and were exercising the legislative power granted to them by the constitution and statutes of our state.[3] Thus, the CIAR qualifies as a legislative statement. Further, an employee’s right to a smoke-free environment is a legally recognized right under the CIAR.[4] Finally, the CIAR explicitly prohibits discharging an employee in retaliation for that employee’s exercise of a legally recognized right. Therefore, I would hold that § 1011 of the CIAR falls within Suchodolski’s first example of a public policy that constitutes an exception to the common-law at-will employment doctrine.[5]
*93 B. RESPONSE TO JUSTICE MARKMAN’S PARTIAL CONCURRENCE AND PARTIAL DISSENT
Justice MARKMAN would hold that § 1011 of the CIAR does not fall within the public-policy exception recognized in Suchodolski because he “would not extend the Suchodolski exceptions beyond the limits of statewide public policy,” particularly where the local regulation is “more restrictive or burdensome than our default statewide public policy.” Post at 115. I disagree because I think that, like other validly enacted laws in Michigan, an otherwise valid local law can be part of Suchodolski’s public-policy exception.
To begin with, local laws are part of the state’s law and policies, so it is difficult to evaluate them distinctly from statewide policy. Justice MARKMAN states that “while the regulation does reflect the public policy of the four counties that enacted it, it cannot, in my judgment, be fairly said to reflect the public policy of the state of Michigan.” Post at 115. But, as a state, Michigan has a policy of delegating authority to county boards of commissioners to act in matters “that relate to county affairs,” as long as the local regulations do not contravene statewide law. MCL 46.11(j); see also Const 1963, art 7, § 34.[6] This, in effect, creates a default scheme of interwoven local and state regulation in areas where local legislative bodies are authorized to act. So long as local laws are within the scope of authority delegated to local legislative bodies by the Legislature and otherwise valid, then local laws are part of the state’s legal and public-policy framework and reflect the Legislature’s choice to enable overlapping state and local regulation of that subject area.6 [7]
*94 The Legislature has even more specifically identified public health as an area in which state and local regulation is needed. The Legislature expressly authorized boards of commissioners, in conjunction with local health departments, to adopt standards “at least as stringent as the standard established by state law” in order to regulate as “necessary and appropriate” to carry out the statutory duties of the local health departments to “continually and diligently endeavor to prevent disease [and] prolong life.” MCL 333.2441(1) and 333.2433(1). As the majority opinion concludes, the CIAR falls within this authority. Therefore, the Legislature has specifically contemplated that there may be a patchwork of regulation across the state in this area.[8]
*95 In light of the interwoven nature of state and local policies in Michigan, in my judgment, validly enacted local laws are part of Suchodolski’s public-policy exception. The purpose of the public-policy exception is to prevent an employer from discharging an employee on a basis that is contrary to public policy. Suchodolski, 412 Mich at 695. Suchodolski provides that a public policy can be established, at a minimum, by an explicit or implicit legislative policy. See id. at 695-696. The CIAR is an explicit legislative policy. Suchodolski did not distinguish between statewide and local laws or statewide and local legislative bodies. Instead, Suchodolski repeatedly referred to public policies that are “legislative statements,” a “legislative expression of policy,” and a “legislative enactment,” without qualification.[9] Id. at 695-696. Suchodolski did recognize some limits to the public-policy exception, but none applies where, as here, the policy was enacted by a legislative body and was intended to directly confer rights on employees.[10]1 do not think it serves the purposes of the public-policy exception to create another limitation excluding laws enacted by local legislative bodies because, in the counties where the CIAR has been enacted, it is part of the governing law of the region and an employer is bound to *96 follow it. It would be contrary to law for an employer to fire an employee on grounds contrary to the CIAR, and it is therefore consistent with the purposes of the public-policy exception to include local laws in the public-policy exception. Therefore, I would not exclude laws enacted by local legislative bodies from the public-policy exception to the general rule of at-will employment.
II. PRIVATE CAUSE OF ACTION
This Court also asked the parties to address whether the boards of commissioners had the authority to adopt §§ 1010(F) and 1012(F) of the CIAR, which create private causes of action.[11] McNeil, 482 Mich at 1014-1015. I agree with the majority opinion’s conclusion that §§ 1010(F) and 1012(F) are valid because they are within the authority of the boards of commissioners and do not contravene the general laws of the state.
As Justice MARKMAN stated, the Michigan Constitution provides that county boards of commissioners have only those legislative, administrative, and other powers granted to them by law. Const 1963, art 7, § 8. The scope of authority delegated to boards of commissioners by law, however, is very broad. To begin with, the constitution provides that the powers granted to counties by the constitution and by law “shall be liberally construed in their favor” and “shall include those fairly implied and not prohibited by this constitution.” Const 1963, art 7, § 34. Further, the Legislature very broadly granted boards of commissioners the power to “pass *97 ordinances that relate to county affairs and do not contravene the general laws of this state .. . MCL 46.11(j).
In light of article 7, §§ 8 and 34, of the Michigan Constitution and MCL 46.11(j), this Court must address two questions in order to determine whether §§ 1010(F) and 1012(F) of the CIAR are within the powers delegated to boards of commissioners: (1) whether the laws enabling boards of commissioners to enact regulations adopted by local health departments fairly imply the power to create a private right of enforcement and, if so, (2) whether doing so otherwise contravenes the general laws of the state or is prohibited by law.
First, in my judgment, §§ 1010(F) and 1012(F) are within the authority delegated to boards of commissioners because the power to create a private right of action is fairly implied by the relevant law delegating authority to boards of commissioners. The state constitution provides that laws concerning counties should be liberally construed in their favor and shall be construed to include “those [powers] fairly implied and not prohibited by this constitution.” Const 1963, art 7, § 34. As noted, the constitution and state statutes give boards of commissioners broad authority to exercise their legislative power by adopting ordinances that relate to county affairs. The power to create a private cause of action is within the legislative power. See Mintz v Jacob, 163 Mich 280, 283; 128 NW 211 (1910).[12] Therefore, in my judgment, the power to create a private cause of action is fairly implied from the broad grant of legislative power given to boards of commissioners in this area.
*98 Justice MARKMAN argues that we should infer that MCL 46.10b was intended to limit boards of commissioners’ power in a manner that would prevent the creation of a private cause of action. As Justice MARKMAN noted, MCL 46.11Q provides that boards of commissioners may adopt sanctions pursuant to MCL 46.10b for violations of ordinances adopted under MCL 46.11(j).[13] Justice MARKMAN would hold that this limits the ability of boards of commissioners to adopt sanctions not included in MCL 46.10b, at least when boards of commissioners are acting solely under powers authorized in MCL 46.11(j). To the extent that MCL 46.11(j) can be read to limit the authority of boards of commissioners, however, I do not think that §§ 1010(F) and 1012(F) of the CIAR necessarily conflict with this limit given that they do not expressly create any additional penalties beyond those applicable for a violation of the ordinance.[14] Sections 1010(F) and 1012(F) only state that “a private citizen may bring legal action to enforce this regulation”; they do not necessarily limit or enhance the extent to which remedies are available.[15] Therefore, *99 as the only question currently before this Court is whether the boards of commissioners may create a private cause of action to enforce the CIAR, and not what remedies may be available through the private cause of action, I do not think that MCL 46.10b limits the power of the boards of commissioners to adopt §§ 1010(F) and 1012(F).
Second, I do not think that §§ 1010(F) and 1012(F) of the CIAR contravene the laws of the state. The authority of boards of commissioners to create private rights of action is limited to the extent that doing so would contravene statewide law since, under article 7, § 8, of the state constitution, boards of commissioners only have the powers granted to them by law and, under MCL 46.11(j), they cannot adopt ordinances that are contrary to Michigan’s general laws. Justice MARKMAN argues that the provisions of the CIAR creating private causes of action are contrary to the general laws of the state because they are inconsistent with MCL 46.10b and therefore do not fall within Suchodolski’s public-policy exception to the common-law at-will employment doctrine. As discussed, I think that §§ 1010(F) and 1012(F) are at least facially valid and thus, at least to the extent this Court is reviewing these sections today, may fall within Suchodolski’s public-policy exception and do not necessarily contravene the general laws of the state.
in. CONCLUSION
For the reasons discussed here, I concur with the majority opinion and conclude that the CIAR, including §§ 1010(F), 1011, and 1012(F), should be upheld.
*100 KELLY, C.J., concurred with CAVANAGH, J.

 Section 1011 of the CIAR reads: “No person or employer shall discharge, refuse to hire or in any manner retaliate against any employee, *89 applicant for employment or customer because such employee, applicant or customer exercises any right to a smoke-free environment afforded by this regulation.”

 As discussed here, I think that § 1011 of the CIAR falls within at least the first Suchodolski example. But even if it did not, I would hold that it is within the general public-policy exception.

 See Const 1963, art 7, § 8; MCL 46.11; MCL 333.2441(1).

 Suchodolski referred to protection for employees acting in accordance with a “statutory” right or duty, but, in the context of the purpose of the exception, there is no reason to differentiate a legally recognized right or duty created by a state statute and a legally recognized right or duty created by local law. See also Gale v Oakland Co Bd of Supervisors, 260 Mich 399, 404; 245 NW 363 (1932), stating that “[a]n act passed by [the county board of commissioners] pursuant to authority delegated or conferred by the legislature has the same force as a statute passed by the legislature itself.” (Quotation marks and citation omitted.)

 This analysis is not inconsistent with Dudewicz v Norris-Schmid, 443 Mich 68, 78-80; 503 NW2d 645 (1993). Dudewicz held that the Whistle-blowers’ Protection Act (WPA) preempted a claim under the public-policy exception to the at-will employment rule because the WPA provides an exclusive remedy for a violation of its non-retaliation provision. Dudewicz, 443 Mich at 78-80. Therefore, Dudewicz limits the first Suchodolski example of a public-policy exception to the at-will employment rule only where a legislative enactment has not only explicitly prohibited the discharge of an employee acting in accordance with a statutory right or duty, but also provided an exclusive remedy for *91 violation of that explicit prohibition. Accord Humenny v Genex Corp, 390 F3d 901, 907-908 (CA 6, 2004) (stating that because Dudewicz limited Suchodolski’s public-policy exception “by holding that ‘as a general rule, the remedies provided by statute for violation of a right having no common-law counterpart are exclusive, not cumulative,’ ” when applying the public-policy exception, the Court should first determine whether there is “a well-established legislative enactment that addresses the particular conduct at issue,” and then, if there is, address whether the statute “provides a remedy to plaintiffs who allege violations of the statute”). To the extent that Vagts v Perry Drug Stores, 204 Mich App 481, 485; 516 NW2d 102 (1994), held otherwise, I would overrule it.
Justice Markman asserts that I have misread Dudewicz, but I respectfully submit that my reading of Dudewicz is the understanding advanced by the Dudewicz Court, as evidenced by the opinion as a whole, and the Court of Appeals cases relied on in Dudewicz. Justice Markman argues that Dudewicz excludes application of the public-policy exception in all instances where a statute or regulation “prohibits discharge in retaliation for the conduct at issue.” Post at 113 n 8. To support this proposition, he relies on the statement in Dudewicz that “ ‘[a] public polity claim is sustainable ... only where there also is not an applicable statutory prohibition against discharge in retaliation for the conduct at issue.’ ” Post at 112 n 8, quoting Dudewicz, 443 Mich at 80. That statement supports Justice Markman’s argument if read standing alone, but in my judgment the context of the opinion shows that the Court intended to limit the public-policy exception only in instances in which a legislative enactment both provides an anti-retaliation provision and also creates an exclusive remedy. Dudewicz held that the Court of Appeals “should have found that any public policy claim was preempted by the application of the WPA,” reasoning that “as a general rule, the remedies provided by statute for violation of a right having no common-law counterpart are exclusive, not cumulative,” and because there was no common-law counterpart to the WPA, “[t]he remedies provided by the WPA... are exclusive . . . .” Id. at 78-79. The Court thus concluded that “because the WPA provides relief to [the plaintiff] for reporting his fellow employee’s illegal activity, his public policy claim is not sustainable.” Id. at 80. In other words, Dudewicz held that where the WPA applies, the public-policy exception to the common-law at-will employment doctrine is preempted because the party was afforded relief by the WPA’s exclusive statutory remedy. This reasoning does not suggest that a non-retaliation provision in a legislative enactment would, standing alone, preempt a public-policy claim if the legislative enactment either did not provide a remedy or if the remedy provided was not exclusive.
*92 Further, this understanding of the public-policy exception is the same understanding presented in the Court of Appeals cases cited for support in Dudewicz, including the cases to which the Court of Appeals limited the public-policy exception. See Dudewicz, 443 Mich at 79-80. For example, in one of those cases, Ohlsen v DST Industries, Inc, 111 Mich App 580, 586; 314 NW2d 699 (1981), the Court stated that the public-policy exception “carvels] out an exception to the general rule that either party may terminate an employment at will for any reason or no reason by providing the discharged employee a remedy where none is provided under the statute.” (Quotation marks omitted; emphasis added.) The Court held that the plaintiff in that case could not state a claim under the public-policy exception, reasoning that
retaliatory discharges are expressly prohibited under the [applicable] statute, and, in addition, a remedy is provided to an employee who claims a violation of the statute. Therefore, unlike the plaintiff in [an earlier case applying the public-policy exception], the plaintiff in the present case has a remedy provided by the statute under which he is suing.
The [earlier] decision does not extend to this case where the statute involved prohibits retaliatory discharge and provides an exclusive remedy. [Ohlsen, 111 Mich App at 585-586 (emphasis added; quotation marks omitted).]
Under the proper reading of Dudewicz, it is clear that it is generally inapplicable here because the CIAR does not necessarily create an exclusive remedial scheme that preempts applicable common-law claims, if such claims exist. As a comparison, the WPA includes a non-retaliation provision and also a remedial scheme that creates a cause of action for damages or injunctive relief, grants jurisdiction to the appropriate court, enumerates the burden of proof, and expressly provides remedies. MCL 15.363 and 15.364. As discussed in part II of this opinion, I do not think that it is appropriate for this Court to decide now to what extent §§ 1010(F) and 1012(F) of the CIAR affect the availability of any private remedies, so it is unclear at this point whether the CIAR creates a private remedy or whether that remedy could be deemed exclusive. If those questions were properly before a court, and that court determined that the CIAR does create a cause of action with private remedies, and further determined that the boards of commissioners intended such remedies to be exclusive, then, under Dudewicz, the public-policy exception would not apply. I would further note that there are circumstances under which § 1011 of the CIAR would be preempted by the WPA and in those cases, under Dudewicz, the public-policy exception to the general rule of at-will employment would not apply.

 See part II of this opinion.

 Justice MARKMAN argues that it would he bad policy to allow local governments to create non-retaliation provisions because “it is consider *94 ably more burdensome” to employers, “given that all 83 counties could theoretically adopt varying local public policies.” Post at 115-116. This outcome is the result of the Legislature’s decision to permit state and local regulation in this area, however, and it is up to the Legislature to determine whether the benefits of local regulation outweigh the costs of a lack of statewide uniformity. Justice Markman states that this position “fails to consider that the Legislature has already done just that by having indicated that a county is only allowed to enact ordinances that ‘do not contravene the general laws of this state.’ ” Post at 116 n 11, quoting MCL 46.10b. I think that Justice Markman is missing my point. Obviously, he and I have differing views about whether the CIAR contravenes the general laws of the state, but I cannot see how his concern that varying local regulations could be “burdensome” to employers is relevant to that discussion. Regardless of whether the CIAR contravenes the law of the state for a different reason, it does not do so merely by virtue of the fact that it is a local regulation, given that the state has an explicit policy of permitting a patchwork of local regulation in many areas of law.

 For this reason, I also disagree with Justice Markman’s statement that because the CIAR is more restrictive than the Michigan Clean Indoor Air Act (MCIAA), the CIAR does not “reflect the public policy of the state of Michigan.” Post at 115. To the extent that the CIAR is more restrictive than the MCIAA, but not preempted by the MCIAA, it reflects the state policy to allow interwoven state and local laws in the area of public health.

 Justice Markman agrees that a county hoard of commissioners “is a legislative body” and that the CIAR “constitutes the ‘law’ in the four counties,” but nonetheless concludes that the Suchodolski public-policy exception was not intended to include laws enacted by county boards because a county board is not “the Legislature” and county laws are not statewide laws. Post at 115. But Suchodolski does not provide a basis for this distinction. The few cases and statutes to which Suchodolski referred did involve laws adopted by the statewide Legislature, but nothing in the opinion indicates that it found that to be significant.

 The limits provided in Suchodolski were that a public policy cannot be established by the code of ethics of a private association and that a right cannot be inferred from extensive regulation if the regulation is not “directed at conferring rights on the employees.” Suchodolski, 412 Mich at 696-697.

 Section 1010(F) of the CIAR states that “[n]otwithstanding any other provisions of this regulation, a private citizen may bring legal action to enforce this regulation.” Section 1012(F) states that “[n]otwithstanding any other provisions of this regulation, a private citizen may bring legal action to enforce this regulation.”

 See also, generally, Gardner v Wood, 429 Mich 290, 301; 414 NW2d 706 (1987). I further note that, in Michigan, the ability to create a private cause of action is also within the authority of the courts. Id.

 The sanctions permitted by § 10b include imprisonment for a period of not more than 90 days or a fine of not more than $500. Notably, the Public Health Code authorizes additional penalties for violation of regulations that, like the CIAR, are also promulgated under the authority of the Public Health Code. See MCL 333.2441(2) and 333.2461.

 The penalties that may be imposed for violations of the CIAR are provided in § 1012(B) and (C) of the CIAR.

 Notably, the question of whether boards of commissioners could create a private cause of action against a private entity for a private remedy, such as damages, is not before us. The question whether a court could or should imply a cause of action for a private remedy from the CIAR is also not before us. I do not think it is necessary or appropriate for this Court to address these issues today given that the Court concludes that the CIAR is at least facially valid and this is a declaratory action. Although Michigan’s court rule permitting declaratory actions, MCR 2.605, should be broadly construed, there are still limitations to the scope of a declaratory action. See Allstate Ins Co v Hayes, 442 Mich 56, 65-66; *99 499 NW2d 743 (1993). I think it is beyond the scope of this declaratory action for the Court to pontificate regarding the remedies available to future private litigants who are not parties to this case.