NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name:    14a0284n.06

No. 13-1128

FILED
*Apr 16, 2014*
DEBORAH S. HUNT, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| CAROLYN FOSTER, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| COUNTRY FRESH, LLC, | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellee. | ) | |

Before:   DAUGHTREY, COLE, and WHITE, Circuit Judges.

**PER CURIAM.**   Plaintiff Carolyn Foster appeals the district court's grant of summary judgment to defendant Country Fresh, LLC, on Michigan state law claims of gender and disability discrimination alleged in a complaint she filed after she was terminated from her job as a truck driver for Country Fresh.   The company claimed that it fired Foster because she violated company policy when she abandoned her truck on the side of the interstate highway, without permission, after it broke down while she was returning it to the company lot.   Foster, who suffers from a condition called polycystic ovary syndrome (PCOS), claimed that she left the vehicle because she was experiencing the heavy menstrual bleeding that PCOS can cause and was in pressing need of pads and replacement clothing; that she left the vehicle only after seeing the tow truck on its way to recover her truck; and that the real motivation for her termination was discrimination against her sex and/or perceived disability.   She alleged that, in firing her,

Country Fresh violated Michigan's Elliot-Larsen Civil Rights Act (ELCRA), Mich. Comp. Laws Ann. §§ 37.2101-2804 (West 2013), by subjecting her to different treatment than male truck drivers, as well as Michigan's Persons with Disabilities Civil Rights Act (PDCRA), Mich. Comp. Laws Ann. §§ 37.1101-1607 (West 2013). She also alleged that Country Fresh violated ELCRA by creating a work environment that was hostile to women and by condoning the sexual harassment she experienced when she worked for the company from October 2007 until October 2010.

In its order granting summary judgment to Country Fresh, the district court found that Foster had failed to make out a *prima facie* case that her termination constituted disparate-treatment sex discrimination. Michigan courts analyze ELCRA disparate-treatment claims using the *McDonnell Douglas* approach adopted in Title VII cases. *Hazle v. Ford Motor Co.*, 628 N.W.2d 515, 520-21 (Mich. 2001) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973)). In order to make out a *prima facie* case of sex discrimination under *McDonnell Douglas*, a plaintiff must show that she was "treated differently than similarly situated male employees for the same or similar conduct." *Humenny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004).

In an effort to satisfy this requirement, Foster introduced evidence that several male truck drivers who left their trucks when they broke down were not fired; she also introduced evidence that several male truck drivers tested positive for drugs while on the job and were not fired. The district court found that, because all of the male truck drivers who abandoned their trucks

first received permission to do so from a supervisor, while Foster – despite receiving explicit instructions to get such permission - did not, and because the company treated drug offenses differently from other offenses, in both sets of cases the conduct was not sufficiently similar to make out a *prima facie* case. The court also found that, even if Foster had made out a *prima facie* case, Country Fresh satisfied its burden of showing a legitimate, nondiscriminatory reason for her termination: namely, her decision to abandon her truck on the side of the road without permission.

On appeal, Foster argues that the district court erred in granting summary judgment by applying an overly narrow interpretation of what it means for conduct to be "the same or similar," citing *Bobo v. United Parcel Serv., Inc.*, 665 F.3d 741, 748-52 (6th Cir. 2012) (noting that Title VII plaintiffs are "not required to demonstrate an exact correlation between [themselves] and others similarly situated" but instead "ha[ve] to show only that [they] and [their] proposed comparators [are] similar in all relevant respects"). She also argues that the district court should have found that the company's stated reason for firing her was merely pretextual.

We review a district court's grant of summary judgment *de novo*. *Alspaugh v. McConnell*, 643 F.3d 162, 168 (6th Cir. 2011). Summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Neither of the arguments that Foster presses on appeal has merit. The district court did not require an "exact correlation" between Foster's conduct and those of her comparator examples. It merely required that the conduct be similar in all relevant respects. The district judge found that the fact that the male truck drivers asked for permission before leaving their vehicles was a relevant way in which their conduct differed from Foster's. The judge also found that, because first-time violators of the company's drug-and-alcohol policy were referred for treatment rather than terminated, whereas there is no evidence that this was the case with respect to violators of the vehicle-abandonment rule, the infractions were not comparable in all relevant respects. Both conclusions are correct. Although Foster claims that using alcohol or drugs on the job is a more serious offense than abandoning one's truck, all of the evidence suggests that Country Fresh considered the latter to be far more serious. Her comparator-examples are therefore not similar in all salient respects. *See Humenny*, 390 F.3d at 906 (holding that the plaintiff, a female employee terminated following a leave of absence, failed to show that male colleagues allowed time off to care for sick parents were similarly situated because the men never requested leaves of absence but used vacation, bereavement, personal, and sick time instead).

Foster does not dispute the factual basis for her termination: She left her truck on the side of the expressway with the keys in the ignition without her supervisor's permission. In asserting that the company's reasons for terminating her were pretextual, Foster relies upon statements by her supervisor, David Black. Black testified at his deposition that, if Foster had

told him that she had to leave the truck before the tow truck was likely to arrive, he "would have worked something out." Black then explained what he meant by this:

> I was in the car when she called. I could have driven out and picked her up. I didn't know – at that point, she said that she had to use the bathroom. If she said I really have to use the bathroom I would have said, well, is there a store around there. If she said yeah, I can see one, can you walk there safely, you know, I would have done something, called another driver who is out on the road, called a supervisor, you know, I would have done something.

Foster construes this testimony to mean that Black would have given her permission to leave the vehicle if she had merely asked and argues that a reasonable jury could thus have concluded that the charge of vehicle-abandonment was merely pretextual. As the district court correctly concluded, however, Black's testimony does not indicate that he would simply have given Foster permission to abandon her truck if asked. Instead it indicates that he would have made arrangements to take care of her needs - including, possibly, calling another nearby driver or supervisor to take care of the truck. This interpretation is backed up by notes from a conversation Black had with Foster shortly after the incident occurred, during which he told her repeatedly that "[we] don't just leave equipment sitting there" and that she should have told him she needed to leave the truck so that they could "have worked something out."

On appeal, Foster also challenges the district court's dismissal of her hostile-work-environment and disability-discrimination claims. These challenges have no merit.

To establish a hostile-work-environment claim under Michigan law, a plaintiff must demonstrate that "a reasonable person, in the totality of circumstances, would have perceived the

conduct at issue as substantially interfering with the plaintiff's employment or having the purpose or effect of creating an intimidating, hostile, or offensive employment environment." *Radtke v. Everett*, 501 N.W.2d 155, 167 (Mich. 1993). As evidence of a hostile workplace, Foster alleged that she found pornography in her truck three times in four years of driving company trucks. She also alleged that an obscene picture was drawn in the staff bathroom with her name attached to it. Except in one instance, she did not contend that the pornography was placed in her truck with the intention to harass her. She also admitted that, when she told Black about the drawing in the men's bathroom, he became "upset" and "kind of storm[ed] out to get something to wash it off with." Black issued a memo to staff regarding these incidents, and Foster did not find any further pornographic material after the memo was circulated. As the district court correctly concluded, this evidence is not sufficient to show that Foster experienced an intimidating, hostile, or offensive work environment. Furthermore, Country Fresh took prompt remedial action both when informed about the bathroom drawing and when informed about an incident in which Foster found a pornographic calendar in her truck. Under Michigan law, this resolution was sufficient to absolve Country Fresh of liability for any harassment Foster experienced as a result of the conduct of her colleagues and supervisors. *See Chambers v. Trettco, Inc.*, 614 N.W.2d 910, 916 (Mich. 2000) (holding that an employer was not liable because it adequately investigated and took prompt and appropriate remedial action following notice of the alleged hostile work environment).

Finally, Foster challenges the district court's dismissal of her disability claim. The PDCRA forbids companies from firing employees either because they are disabled or because

they are regarded as disabled. *Michalski v. Bar-Levav*, 625 N.W.2d 754, 759-60 (Mich. 2001). Foster does not claim that she was disabled but, instead, that Country Fresh regarded her as such. However, she provided virtually no evidence to support this claim. She alleged that on one occasion in 2008 or early 2009 she told supervisor Thomas West that she had PCOS and might need to go to the hospital "because of [her] period." West disputed that Foster said anything more to him than that she "wasn't feeling good" and might have to go to the hospital, but he admitted that on another occasion, Foster mentioned to him that she had some "issues regarding female problems." Otherwise, Foster did not allege, nor is there evidence to suggest, that the Country Fresh officials who made the termination decision knew about her condition, or considered her to be disabled as a result. Thus, her supervisor's knowledge of her medical condition cannot constitute direct evidence of discrimination by Country Fresh. *See Carter v. Univ. of Toledo*, 349 F.3d 269, 273 (6th Cir. 2003).

These and other reasons why judgment should be entered for the defendant have been set out and well-analyzed by the district court. The issuance of a full written opinion by this court would be duplicative and would serve no useful precedential purpose. We therefore AFFIRM the judgment of the district court based upon the reasoning and conclusions in the court's opinion and order filed on December 31, 2012.