<u>NOT RECOMMENDED FOR FULL-TEXT PUBLICATION</u>

File Name: 15a0049n.06

Case No. 14-1696

**FILED**

*Jan 14, 2015*

DEBORAH S. HUNT, Clerk

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| SHAHEDA JENKINS, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| FOOT LOCKER INC., | ) | MICHIGAN |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | |

BEFORE: BATCHELDER, SUTTON, and COOK, Circuit Judges.

SUTTON, Circuit Judge. Shaheda Jenkins claims that Foot Locker denied her a promotion and pay raises and chose not to rehire her based on her race. After discovery, the district court granted summary judgment for Foot Locker because Jenkins could not make out a prima facie case of discrimination on her failure-to-rehire claim, and because Jenkins failed to exhaust her other claims before the Equal Employment Opportunity Commission (EEOC). The court also denied Jenkins leave to amend her complaint. We affirm.

I.

In May 2008, Shaheda Jenkins, an African American woman, began selling shoes on a part-time basis at a Foot Locker store in Dearborn, Michigan. Jenkins stopped working there roughly a year and a half later. In February 2012, she reapplied for a sales job with the store and

to that end attended a company job fair. At that point, according to Jenkins, management said she would be rehired (or at least that she was eligible for rehire), but no offer ever came.

In May 2012, Jenkins filed a charge of race discrimination with the EEOC based on Foot Locker's failure to hire her after the job fair. Two months later, Jenkins filed this race-discrimination lawsuit under Title VII in federal court. *See* 42 U.S.C. § 2000e-2(a)(1). Proceeding without an attorney, she reiterated her failure-to-rehire claim and added new claims for race discrimination surrounding Foot Locker's denial of a promotion and pay raises during her 2008-2009 employment. The parties conducted some discovery, but the case remained largely dormant for over a year.

Things picked up in August 2013, when the district court, at Jenkins' request, appointed pro bono counsel for her. Jenkins moved to amend her complaint to add three more claims: a federal disability claim based on an ankle injury she suffered in a car accident, *see* 42 U.S.C. § 12112(a), and two state discrimination claims based on race and disability, *see* Mich. Comp. Laws §§ 37.2202, 37.1202. The magistrate judge denied the proposed amendment as futile. Jenkins moved to amend her complaint again, this time adding similar but reworded disparate treatment claims premised on race and disability and a gender-based disparate impact claim, all based on a mix of federal and state law.

In October 2013, Foot Locker moved for summary judgment on all of the claims. Jenkins' response was due on November 1. *See* E.D. Mich. L.R. 7.1(e)(1)(B). The district court referred the motion to the magistrate and reminded Jenkins about the deadline. The deadline came and went with no response, and six months later the magistrate issued a report and recommendation (R&R) that the court grant Foot Locker's motion in its entirety and deny Jenkins' second motion to amend as futile. Only then, in her objections to the R&R, did Jenkins

respond to Foot Locker's arguments. The district court agreed with the magistrate's analysis, adopted the R&R in full, and rejected all of Jenkins' claims as a matter of law.

II.

Jenkins' appeal faces several obstacles. *First,* Jenkins neglected to respond to Foot Locker's motion for summary judgment, and accordingly forfeited any objection to the motion. Jenkins never sought an extension of time to respond or moved for leave to file late. Nor did she file an affidavit under Civil Rule 56(d) explaining that she needed more time for discovery to respond to Foot Locker's motion. When Jenkins finally responded—long after the deadline and only in response to the R&R—that was too late. Arguments not presented to the magistrate are forfeited. *See United States v. Waters*, 158 F.3d 933, 936 (6th Cir. 1998). Under these circumstances, summary judgment was proper on this ground alone. *See Turner v. Ky. Transp. Cabinet*, 574 F. App'x 664, 666 (6th Cir. 2014).

Jenkins claims that we should forgive her failure to respond to the motion because the magistrate suggested that Foot Locker refile its summary judgment motion. In her mind, this "unofficially set [the motion] aside," so she was caught off guard when the magistrate suddenly granted it. Reply Br. at 4. Whatever Jenkins (or her counsel) allegedly heard, one thing is clear: The court never issued any such order. That leaves us where we started—without a timely response to a motion for summary judgment and with the consequences that flow from that failure: a forfeiture.

*Second,* even if we reached the merits of Jenkins' belated arguments, that would not change the outcome. Foot Locker was entitled to summary judgment if, after giving Jenkins the benefit of all reasonable inferences from the record, "no genuine dispute as to any material fact"

3

remained and the company deserved judgment as a matter of law.  Fed. R. Civ. P. 56(a); *see*

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

Start with the failure-to-rehire claim, in which Jenkins alleges that Foot Locker refused to

hire her after the job fair on account of her race.  No direct evidence of discriminatory intent

supports this claim.  To determine whether circumstantial evidence supports it, we use the

*McDonnell Douglas* burden-shifting framework.  *See McDonnell Douglas Corp. v. Green*,

411 U.S. 792, 802–06 (1973).  Under that framework, Jenkins initially must show that she (1) is

a member of a protected class; (2) applied for a job and did not receive it; (3) was qualified for

the job; and (4) was rejected in favor of a similarly situated applicant outside her protected class,

or was otherwise treated differently than such an applicant.  *See Seay v. TVA*, 339 F.3d 454, 463

(6th Cir. 2003); *see also Serrano v. Cintas Corp.*, 699 F.3d 884, 892–93 (6th Cir. 2012).  If

Jenkins can make out this prima facie case, the burden shifts to Foot Locker to offer evidence of

a nondiscriminatory reason for failing to hire her.  *Seay*, 339 F.3d at 463.  If the company offers

such evidence, the burden shifts back to Jenkins to show that this alleged reason was pretextual

and that Foot Locker rejected her based on her race.  *Id.*

Jenkins cannot establish a prima facie case of discrimination.  She does not dispute that,

of the twenty-eight applicants hired from Foot Locker's job fair, twenty-seven were African

American and one was multiracial.  Nor does she point to any Caucasian applicant whom the

company treated differently.  On this record, no reasonable jury could infer that Foot Locker

chose not to rehire Jenkins based on her race.

Jenkins' appellate briefs are not a picture of clarity.  Charitably reading those briefs, we

discern two counterarguments.  She suggests that the comparator prong of the prima facie

showing does not apply because Foot Locker hired multiple employees.  Jenkins cites no

authority for this proposition, and we know of none. What we do know cuts in the opposite direction. *See Seay*, 339 F.3d at 463 ("A prima facie case requires a plaintiff to show . . . that a similarly-situated person who was not in the plaintiff's protected class received the job."). Nothing in the record suggests Jenkins was treated differently than other applicants based on her race. To the contrary, 27 of the 28 chosen applicants from the job fair shared her race, a track record that makes it exceedingly difficult—indeed implausible—to infer (in the absence of direct evidence of discrimination) that she was "rejected under circumstances which give rise to an inference of unlawful discrimination." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

In the alternative, Jenkins suggests there were comparators, noting that the company treated her differently because she was improperly placed in a pool of first-time applicants, and applicants with less experience were hired over her. But Jenkins points to no specific individual hired, offers no citation to the record, and most importantly does not explain how any of this shows she was treated differently than similar *nonprotected* applicants. Without any non-African-American comparators (or any other sign of racism), no jury could reasonably infer race discrimination based on the company's decision not to hire her after the job fair.

*Third*, Jenkins failed to exhaust her 2008-2009 lack-of-promotion and lack-of-pay-raise claims before the EEOC. All that she alleged before the EEOC was that Foot Locker discriminated against her by failing to rehire her in 2012. Promotion and pay claims arising from 2008 and 2009 simply do not "reasonably grow out of the facts and claims [Jenkins] asserted" in the EEOC charge. *See Jones v. Sumser Ret. Vill.*, 209 F.3d 851, 853 (6th Cir. 2000). Nor can she tenably maintain that all three claims are part of the same continuing violation. Discrete acts such as a refusal to hire are readily separable from other unlawful employment practices. *See*

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). Having failed to present her promotion and pay claims to the EEOC, she may not raise them here.

*Fourth*, even if we were willing to forgive her failure to exhaust the promotion and pay claims and even if we were willing to treat them as wrapped up in the 2012 EEOC charge, that would leave a time-bar problem. Jenkins brought her EEOC charge nearly 800 days after she last worked for Foot Locker. That is long past the 300-day deadline. *See* 42 U.S.C. § 2000e-5(e)(1). Jenkins briefly gestures toward equitable tolling, suggesting that, until recently, she was oblivious to the company's discriminatory practices. But she offers no further explanation, no caselaw, and no evidence to support the point. Such perfunctory, undeveloped arguments are forfeited—and doubly so here given the broader forfeiture noted above. *See United States v. Phinazee*, 515 F.3d 511, 520 (6th Cir. 2008).

### III.

Jenkins separately appeals the district court's two denials of her motions for leave to amend her complaint. If Jenkins' new claims were indeed futile, the district court was free to deny the proposed amendments. *See Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 569 (6th Cir. 2003). Adding a new claim is futile if it fails to state a claim upon which relief may be granted within the meaning of Civil Rule 12(b)(6). *See Thiokol Corp. v. Dep't of Treasury, State of Mich. Revenue Div.*, 987 F.2d 376, 382–83 (6th Cir. 1993).

No reversible error occurred. Her federal ADA claim fails because she did not exhaust that claim before the EEOC. *See Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 309 (6th Cir. 2000). Her first attempt to add a state disability claim fails too because she expressly acknowledged that her injury did "not . . . limit[] a major life activity," R. 21 at 3 (Page ID # 58), a prerequisite to being "disabled" within the meaning of the Michigan statute. *See* Mich. Comp.

Laws § 37.1103(d)(i)(A). The second attempt to add the same reworded claim fares no better because Jenkins' "[t]hreadbare" allegation that she was disabled is entirely conclusory and supported by no facts describing the impact of her ankle injury. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Jenkins' disparate impact claims also go nowhere because she only alleges that Foot Locker's job fair interview techniques disfavor "less assertive women," not women as a class. "Less assertive women" are not a protected class. *See* 42 U.S.C. § 2000e-2(a); Mich. Comp. Laws § 37.2202. As for Jenkins' proposed race discrimination claim under state law, she offers no theory of prejudice—no explanation why that claim would have met a different fate from her claim under Title VII, either legally or factually. *See Humenny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004) (claims of discrimination under Michigan employment discrimination law are analyzed under the same framework used in Title VII cases). On this record, the district court permissibly denied both of Jenkins' motions for leave to amend her complaint.

For these reasons, we affirm.