RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 12a0130p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

ALISHA REGAN,

        *Plaintiff-Appellant,*

    *v.*

FAURECIA AUTOMOTIVE SEATING, INC.,

        *Defendant-Appellee.*

No. 11-1356

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:10-cv-10967—Patrick J. Duggan, District Judge.

Decided and Filed: May 10, 2012

Before: MARTIN, COOK, and KETHLEDGE, Circuit Judges.

_____

**COUNSEL**

_____

**ON BRIEF:** Courtney E. Morgan, Jr., Debra N. Pospiech, MORGAN & MEYERS, PLC, Dearborn, Michigan, for Appellant. David B. Calzone, Gregory V. Murray, Bernice McReynolds, VERCRUYSSE MURRAY & CALZONE, P.C., Bingham Farms, Michigan, for Appellee.

_____

**OPINION**

_____

BOYCE F. MARTIN, JR., Circuit Judge. This is an employment discrimination case. Alisha Regan appeals the district court's grant of summary judgment in favor of her former employer, Faurecia Automotive Seating, Inc., on her disability discrimination claims under the Americans with Disabilities Act and the Michigan Persons With Disabilities Civil Rights Act, and her gender discrimination claims under Title VII of the Civil Rights Act of 1964 and Michigan's Elliott-Larsen Civil Rights Act.

1

In her complaint, Regan claimed that Faurecia had failed to provide a reasonable accommodation for her alleged disability of narcolepsy, and had discriminated against her on the basis of her gender.  On her disability claims, the district court found that Regan failed to present evidence sufficient to demonstrate that (1) she is disabled under the federal and state disability acts; and (2) Faurecia was required under the statutes to provide her requested accommodation.  The district court also found that Regan failed to establish a prima facie case of gender discrimination because she failed to demonstrate that (1) she suffered an adverse employment action; and (2) Faurecia treated her differently than similarly situated males.  For the following reasons, we **AFFIRM** the district court's grant of summary judgment in favor of Faurecia.

## I.

The opinion of the district court, *Regan v. Faurecia Automotive Seating, Inc.*, No. 10–10967, 2011 WL 1303126, at *2-4 (E.D. Mich. Mar. 7, 2011), provides a summary of the case.  We relate the pertinent facts below.

Faurecia is an automotive supplier that specializes in designing and assembling seats for cars.  Regan began working for Faurecia in May 2005 as a temporary contract employee in the position of Prototype Seat Builder at the company's facility in Troy, Michigan.  In July 2006, Faurecia hired Regan for the position as a permanent employee.  At that time, the typical work hours for a Prototype Seat Builder were 6:00 a.m. to 3:00 p.m.

When Regan began working at Faurecia she lived with her husband in Oxford, Michigan, twenty-four miles from the facility.  In approximately January 2008, Regan's husband took a new job and the two of them moved to Perry, Michigan, seventy-nine miles from the Troy facility.  She testified that her commute from Perry to the Faurecia facility takes between two and four hours.

Regan has been diagnosed with narcolepsy.  In 1997, she sought treatment with Dr. Robert R. Reagle, D.O., after suffering from increased difficulty sleeping, fatigue, falling asleep at work and school, reduced energy levels, difficulty concentrating,

forgetfulness, irritability, and driving accidents related to sleepiness while driving. Regan completed a sleep study with normal results, and a multiple sleep latency test on which she tested positive for "sleep onset REM periods," meaning she fell asleep within two and a half minutes of being asked to take a nap, in contrast with the normal period of greater than ten minutes.

Since at least 1999, Dr. Reagle has treated Regan's narcolepsy with Ritalin and Provigil. Dr. Reagle noted that "most of [her] symptoms have improved" since she began taking medications. Regan herself noted that the medications have helped with her narcolepsy, and she no longer falls asleep without warning and has not fallen asleep when driving since 1997. She testified that, at Faurecia, she naps regularly during her lunch hour but she has fallen asleep only once while seated at her computer. She also testified that she does not suffer from hallucinations, sleep paralysis, or cataplexy. Regan informed Faurecia managers of her narcolepsy prior to obtaining her first position with the company.

In 2008, Faurecia's Director of Engineering Shared Services, Tina Stuart, determined that the work schedule in Regan's department—6:00 a.m. to 3:00 p.m.—was not productive because the materials needed for their work did not arrive from other departments until later than 6:00 a.m., thereby making the early morning schedule inefficient. Therefore, Stuart changed the department's standard work hours to 7:00 a.m. to 4:00 p.m. for productivity purposes, effective September 29.

Before September 29, Regan met with Stuart and Gunn Hurite, a Faurecia supervisor who was recently appointed as the supervisor of Regan's department. She informed them that her narcolepsy would make it difficult for her to work the new hours because she would be commuting in heavier traffic. In her deposition, Regan explained that she gets tired more quickly driving in heavier traffic and, because she believed the commute would take longer because of heavier traffic, she would need to pull over and rest during the drive. She requested that she be able to continue working from 6:00 a.m. to 3:00 p.m. or to work from 7:00 a.m. to 3:00 p.m. without taking a lunch break. Stuart

told Regan she could apply for eligibility to take leave under the Family and Medical Leave Act or quit.

Regan also told the human resources manager, Debby Vargo, about her difficulty with the new hours. Vargo responded that Regan could take leave under the Family and Medical Leave Act or quit. Vargo gave Regan Family and Medical Leave Act paperwork and told her that she should complete it if she had a medical condition affecting her ability to work, and then they could discuss possible accommodations.

Regan got a note from Dr. Reagle stating that Regan has narcolepsy and that "[i]t is in her medical interest to minimize her drive time to and from work. A work schedule of 6 a.m. to 3 p.m. is recommended." Regan claims she gave this note to Stuart, Hurite, and Vargo; all three testified that they never saw this note.

Regan did not complete the Family and Medical Leave Act paperwork. After allegedly submitting Dr. Reagle's note and not receiving a response from Faurecia, Regan submitted her resignation on September 29, noting that she was resigning because of the "tremendous consequence" the change in work hours would have on her narcolepsy.

Regan filed suit alleging that Faurecia's refusal to let her work an altered schedule violated the federal and state disabilities acts and civil rights acts. The district court granted summary judgment for Faurecia on all claims. Regan appeals.

## II.

We review de novo a district court's grant of summary judgment. *Salling v. Budget Rent-A-Car Sys., Inc.*, 672 F.3d 442, 443 (6th Cir. 2012). A grant of summary judgment is proper if the materials in the record "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In deciding a motion for summary judgment, the court must view the factual evidence and draw all reasonable inferences in favor of the nonmoving party." *Banks v. Wolfe Cnty. Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

### A.     Reasonable Accommodation for a Disability

Under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, and the Michigan Persons With Disabilities Civil Rights Act, Mich. Comp. Laws §§ 37.1201-.1214, which mirrors the federal statute, *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1178 n.3 (6th Cir. 1996), employers are prohibited from discriminating against a qualified individual with a disability because of his or her disability in employment matters, such as hiring, advancement, and discharge.  § 12101, *et seq.*  Such discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity."  *Id.* § 12112(b)(5)(A).

Regan claims that Faurecia failed to provide her with a reasonable accommodation for her disability in violation of both the federal and state disabilities acts.  The district court found that Regan's narcolepsy "does not substantially limit . . . major life activities to the degree necessary to qualify her as disabled under [the disabilities acts]."  The district court also found that, even if Regan is disabled, her request for an altered work schedule to minimize her commute time is not a required reasonable accommodation.  Regan argues on appeal that the district court erred in making these two findings.

Even assuming that Regan's narcolepsy qualifies her as disabled under the disabilities acts, she has not presented evidence demonstrating that her request for an altered work schedule is a required reasonable accommodation.  Section 12111(9) of the Americans with Disabilities Act defines "reasonable accommodation" to include:

> (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

"An employee has the burden of proposing an initial [reasonable] accommodation." *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 202 (6th Cir. 2010); *Walsh v. United Parcel Serv.*, 201 F.3d 718, 725 (6th Cir. 2000) ("The burden of establishing that the proposed accommodation is reasonable remains with the plaintiff."). "[T]he inquiry into reasonableness requires[] a factual determination untethered to the defendant employer's particularized situation." *Walsh*, 201 F.3d at 726 n.3 (internal quotation marks omitted).

Regan proposed that Faurecia let her work an earlier schedule so that she could commute in what she believed to be lighter traffic; she did not present evidence or argument in the district court, or here, supporting the theory that her proposed schedule would provide a commute with lighter traffic.

Though this Circuit has not yet decided this precise issue, many courts have found that the Americans with Disabilities Act does not require an employer to accommodate an employee's commute. *Robinson v. Bodman*, 333 F. App'x 205, 208 (9th Cir. 2009) ("The [employer] was not required to accommodate [the plaintiff's] inability to drive to work or use public transportation. Although an employer is required to make reasonable accommodations to eliminate barriers for a disabled employee in the workplace, the employer is not required to eliminate barriers outside the workplace that make it more difficult for the employee to get to and from work . . . ."); *Laresca v. Am. Telephone & Telegraph*, 161 F. Supp. 2d 323, 333 (D.N.J. 2001) ("[T]he change to day shift sought by Plaintiff is not an 'accommodation,' that it is legally obligated to provide, but is simply a request for an easier, more convenient commute."); *Salmon v. Dade Cnty. Sch. Bd.*, 4 F. Supp. 2d 1157, 1163 (S.D. Fla. 1998) (rejecting plaintiff's claims that employer "failed to accommodate her disability by transferring her to a school which afforded her a shorter commute [because] plaintiff's commute to and from work is an activity that is unrelated to and outside of her job"); *Schneider v. Cont'l Cas. Co.*, No. 95 C 1820, 1996 WL 944721, at 9 (N.D. Ill. Dec. 16, 1996) (finding employer is not required to eliminate an employee's commute to accommodate the employee's back injury); *see also Chandler v. Underwriters Labs., Inc.*, 850 F. Supp. 728, 736 (N.D. Ill. 1994) (employee's inability to undertake a long commute because of back injury was not

a disability for purposes of the employer's benefit plan but instead a limitation within the employee's control). "While an employer is required to provide reasonable accommodations that eliminate barriers in the work environment, an employer is not required to eliminate those barriers which exist outside the work environment." *Salmon*, 4 F. Supp. 2d at 1163.

We find, similarly, that the Americans with Disabilities Act does not require Faurecia to accommodate Regan's request for a commute during more convenient hours. Under the facts present here, her proposal of a modified work schedule for purposes of commuting during hours with allegedly lighter traffic is not a reasonable accommodation. We affirm the district court's grant of summary judgment for Faurecia on Regan's disability discrimination claims.

### B.     Prima Facie Case of Gender Discrimination

Regan appeals the district court's grant of summary judgment to Faurecia on her claims of gender discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and the Elliott-Larsen Civil Rights Act, Mich. Comp. Laws §§ 37.2101-.2803. "Cases brought pursuant to the [Elliott-Larsen Civil Rights Act] are analyzed under the same evidentiary framework used in Title VII cases." *Humenny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004). To establish a prima facie case of gender discrimination through circumstantial evidence, Regan must show that: "(1) she is a member of a protected group; (2) she was subjected to an adverse employment decision; (3) she was qualified for the position; and (4) she was replaced by a person outside the protected class, or similarly situated non-protected employees were treated more favorably." *Peltier v. United States*, 388 F.3d 984, 987 (6th Cir. 2004).

Regan claimed that Faurecia discriminated against her based on her gender by permitting male employees to work through lunch and leave work early on a regular basis, but not permitting her to do the same. On appeal, she argues that the district court erred in finding that she had failed to establish a prima facie case because she did not demonstrate that (1) she suffered an adverse employment action, and (2) she was treated differently than similarly situated males for the same conduct.

Regan's gender discrimination claims fail because she did not show that she suffered an adverse employment action. "An adverse employment action is an action by the employer that constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 402 (6th Cir. 2008) (internal quotation marks omitted).

Regan relies on the evidence set forth above to claim that Faurecia's denial of her request to regularly work through lunch or to work different hours was an adverse employment action. Faurecia's denial of Regan's request to have a modified work schedule and work through the lunch hour is not "a significant change in employment status." *Id.* "A 'mere inconvenience or an alteration of job responsibilities' . . . is not enough to constitute an adverse employment action." *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 797 (6th Cir. 2004) (en banc) (quoting *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 886 (6th Cir. 1996)). Therefore, the denial of her request does not constitute an adverse employment action.

Alternatively, Regan argues that her resignation following Faurecia's denial of her request to shift her work schedule an hour earlier was constructive discharge and, thus, constituted an adverse employment action. "To demonstrate constructive discharge, a plaintiff must adduce evidence to show that (1) the employer deliberately created intolerable working conditions, as perceived by a reasonable person, (2) the employer did so with the intention of forcing the employee to quit, and (3) the employee actually quit." *Savage v. Gee*, 665 F.3d 732, 739 (6th Cir. 2012) (alterations and internal quotation marks omitted). "[B]oth the employer's intent and the employee's objective feelings must be examined." *Id.* In evaluating the first prong of this test, *Saroli v. Automation & Modular Components, Inc.*, 405 F.3d 446, 451 (6th Cir. 2005), we ask:

> Whether a reasonable person would have [felt] compelled to resign depends on the facts of each case, but we consider the following factors relevant, singly or in combination: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a [male] supervisor; (6) badgering, harassment, or humiliation by the employer calculated to

encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status.

Regan has not put forth evidence showing that Faurecia "deliberately created intolerable working conditions, or that there was any intention that the [new work schedule] was designed to force [Regan] to quit." *Tepper v. Potter*, 505 F.3d 508, 515 (6th Cir. 2007). She has not argued that Faurecia's schedule modification fit any of the *Saroli* factors. The new work schedule requires Regan and others in her department to work the exact same number of hours as the previous schedule; the only change is that the schedule has been shifted one hour later. The new work hours are daytime hours as were the previous hours, and the company has still allotted one hour for lunch, just as under the previous schedule. A reasonable person would not find that the new work hours instituted by Faurecia were intolerable. We do not need to examine the other elements of constructive discharge because we find that Regan's constructive discharge argument fails to establish the first element. Therefore, she cannot use a claim of constructive discharge to establish an adverse employment action for purposes of demonstrating gender discrimination.

Because Regan has failed to demonstrate that she suffered an adverse employment action, we need not examine the other elements of her gender discrimination claims to find that these claims fail. We affirm the district court's grant of summary judgment for Faurecia on Regan's claims of gender discrimination.

### III.

We **AFFIRM** the judgment of the district court.