NOT RECOMMENDED FOR FULL-TEXT PUBLICATON
File Name: 15a0641n.06

No. 14-1824

## UNITED STATES COURT OF APPEALS
### FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| ROBERT HURTT, | ) | **FILED** |
| | ) | Sep 14, 2015 |
| Plaintiff-Appellant, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| INTERNATIONAL SERVICES, INC., | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellee. | ) | |
| | ) | |

**BEFORE:** KEITH and CLAY, Circuit Judges; MARBLEY, District Judge.*

**DAMON J. KEITH, Circuit Judge.** Plaintiff-Appellant, Robert Hurtt ("Hurtt"), appeals the district court's order granting summary judgment to Defendant-Appellee, International Services, Inc. ("ISI") on Hurtt's claims of: (1) disability discrimination and failure to accommodate under the Americans with Disabilities Act ("ADA"),[1] 42 U.S.C. § 12112(a); (2) Michigan's Persons with Disabilities Civil Rights Act ("PWDCRA"), Mich. Comp. Laws § 37.1101 *et seq.*; (3) retaliation under the ADA, 42 U.S.C. § 12203; (4) retaliation under the PWDCRA, Mich. Comp. Laws § 37.1602(a); (5) Family and Medical Leave Act ("FMLA") interference, 29 U.S.C. § 2615(a)(1); and (5) FMLA retaliation, 29 U.S.C. § 2615(a)(2). The district court found that Hurtt failed to establish a prima facie case of: (1) discrimination under

---

* The Honorable Algenon L. Marbley, United States District Judge for the Southern District of Ohio, sitting by designation.
[1] The district court did not address Hurtt's failure to accommodate claim, which is analyzed separately from the disability discrimination claim. Thus, this claim is not properly before us for review. *See* 42 U.S.C. § 12112(b)(5)(A); *Burdett-Foster v. Blue Cross Blue Shield of Mich.*, 574 F. App'x 672, 680 (6th Cir. 2014) (stating the prima facie case for a failure to accommodate claim).

the ADA and PWDCRA; (2) retaliation;[2] and (3) FMLA interference. Particularly, the district court concluded that Hurtt could not show that he suffered an adverse employment action for any claim.

Because the district court erred in articulating the correct standards for Hurtt's disability discrimination and FMLA interference claims, and because Hurtt has shown the existence of genuine issues of material fact, as required to withstand summary judgment, we **REVERSE** and **REMAND** all claims for further proceedings consistent with this opinion.

## I.   BACKGROUND

Robert Hurtt was first employed by ISI (previously known as "IPA") as a business analyst from 2007-2010. (R. 46-10, Hurtt Dep. 18-19, 26-27, Pg ID 1079, 1081). ISI provides management and tax consulting services to small and medium-sized businesses. Hurtt's position required him to travel to various business locations to convince the business to purchase a "survey" from a senior business consultant. Essentially, Hurtt's job was that of a traveling salesman and he worked on a commission pay scale. (*Id.* 21, Pg ID 1079). He left ISI in 2010 due in part to the quality of his travel assignments because the opportunity to make commission from his assignments was extremely low. (*Id.* 41-42, Pg ID 1084-85). In 2011, Donna Brewer, ISI's Survey Services Director, recruited Hurtt to return to ISI as a senior business analyst. (R.46-3, Brewer Dep. 6, Pg ID 863). Shortly thereafter, Hurtt met with Brewer, as well as John Burgess, ISI's owner, and Tyler Burgess, John's son, to discuss Hurtt returning to ISI. Hurtt agreed to return to ISI after Brewer agreed to give him: (1) a twelve percent commission; (2) a $70,000 per year "draw"; (3) pre-paid work-related flights, hotels, and car rentals (as opposed to reimbursement); and (4) $40/day per diem for food during his travels. (Brewer Dep. 11, Pg ID

---

[2] The district court held that Hurtt failed to establish a prima facie case of retaliation under the ADA and PWDCRA. The district court did not address Hurtt's claims of retaliation under the FMLA, nor did the district court separately analyze Hurtt's failure to accommodate claim under the ADA.

864; 15, Pg ID 865); (R. 46-15, 9/5/12 Conversation, Pg ID 1148); (Hurtt Dep. 210-11, Pg ID 1127). According to Hurtt, Brewer also agreed to give Hurtt a four-day work week, with two assignments per week. (Hurtt Dep., 78, Pg ID 1094). The parties agreed to these terms and Hurtt returned to ISI as a senior business analyst.

There is some dispute as to the classification of the $70,000 "draw." Brewer testified in her deposition that "draw" meant "against money earned," (Brewer Dep. 12, Pg ID 864), and ISI asserts that Hurtt's draw was "recoverable" or "a draw against Hurtt's earned commissions, which could be reviewed and changed by ISI." Appellee's Br. 15. According to John Burgess, the recoverable draw meant ISI would recoup from Hurtt's commission, the bi-weekly draw amount paid to Hurtt every two weeks. (R. 46-4, J. Burgess Dep. 26, Pg ID 897). Thus, if Hurtt's commissions did not exceed the draw amount for a particular two week period, Hurtt would be indebted to ISI for the difference. (*Id.*).[3] Hurtt, on the other hand, testified that the draw was "guaranteed income" or "forgivable." (Hurtt Dep. 210-11, Pg ID 1127). He contends this meant that if he made commission income above $70,000, he would keep the difference, but if he made less than $70,000, he would not have to repay the $70,000. (*Id.*). On September 23, 2011, Brewer sent a memo via email to ISI's accounting department that stated the following:

> Effective 9/26/2011, Robert Hurtt will be employed as a Senior Business Analyst for GPS. Mr. Hurtt is to be paid a 12% commission. His hotel and rental care are to be billed and paid for by us. He will receive a $40 a day perdiem [sic] as well as a $70,000 a year draw.

---

[3] John Burgess provided the following explanation of his meaning of a "recoverable draw": "It means—let's assume that I'm paying you $2,000 a week, we'll just use that number as a recoverable draw, we have done this sometimes in the company, which we did here. You receive that $4,000 every two weeks, you receive that $4,000 gross every two weeks, and let's assume the first two weeks you don't make it and the next two weeks you don't make it, but let's say you made $1200 in one week and 2000 in the next so, therefore, you would be behind 2800 and you would behind 2000, you would be behind 4,800. The next check is $11,000, we take back the 4800 against the 11,000, to bring us back to a point where we're even on that recoverable draw." (J. Burgess Dep., 26, Pg ID 897).

(R. 43-5, Ex. E, Pg ID 626). Neither the memo nor any or documentation provided by the parties specifies the terms of the draw.

Hurtt returned to ISI in September of 2011, and stated that he soon began traveling extensively with little time for sleep. (Hurtt Dep. 89-90, Pg ID 1096-97). He was prescribed sleeping pills, but stated that they gave him migraines if he did not get the adequate amount of sleep. Hurtt testified that he would often get only three or four hours of sleep or time in a hotel. (*Id.*, 91, Pg ID 1097). He stated that, "it got to the point where I would be traveling 1:00, 2:00 in the morning . . . and then trying to open and function the next day." (*Id.* 89, Pg ID 1096). On March 5, 2012, Hurtt sent Brewer a note from Dr. Pamela Littles documenting hypertension, chronic cough, upper respiratory infection, dizziness, sinusitis, and mental fatigue. (R. 47-3, Dr. Littles Doc. Pg ID 1161). Dr. Littles recommended "sleep hygiene" and time off from traveling. (*Id.*). Brewer interpreted the doctor's note to mean that Hurtt had a cold, (Brewer Dep. 63, Pg ID 877), and subsequently told Hurtt to "get your dick out . . . and toughen up." (Hurtt Dep. 99, Pg ID 1099).

Hurtt claims that after he requested more time for sleep and a four-day work week, ISI threatened to take away his draw. (*Id.* 104; 107, Pg ID 1100; 1101). He testified that he subsequently attempted suicide. (*Id.* 83-85, Pg ID 1095). With medication and therapy, Hurtt continued to work the following months. According to Hurtt, he communicated with Brewer "[o]ver and over again" about his need for down-time between assignments. (Hurtt Dep. 212, Pg ID 1127). He testified that he asked Brewer on an "almost . . . weekly basis" about "going back to the original agreement of the four-day work week" so that he had "adequate [] time to recoup" and sleep, to no avail. (*Id.*, 88-89, 90; Pg ID 1096-97).

On September 1, 2012, Hurtt saw a licensed therapist, Dr. Melissa Sharnowski. Dr. Sharnowski faxed ISI a letter dated September 1, 2012, stating that Hurtt suffered from acute anxiety and depression. (R. 43-2, Ex. B, Pg ID 569). Dr. Sharnowski placed Hurtt on leave through September 4, 2012, authorizing his return to work on September 5. (*Id.*). The letter further stated that Hurtt might require additional time off over the next nine to twelve months, and advised him to seek FMLA leave. (*Id.*). On September 4, 2012, Hurtt submitted an FMLA request for leave when his acute anxiety or depression flared up. ISI processed Hurtt's FMLA request. The following day, however, ISI terminated Hurtt's $70,000 draw, and made the termination retroactive to September 1. (Hurtt Dep. 112-13, Pg ID 1102); (Brewer Dep., 87-88, Pg ID 766). Hurtt was placed on a commission-only pay scale, and his pre-paid travel expenses were terminated. (Brewer Dep. 88, Pg ID 883). Hurtt's placement on commission resulted in him becoming immediately indebted to ISI for over $22,751.93 in "advanced, unearned commissions." (Appellant Br. 8; *see also* Hurtt Dep. 152, Pg ID 1112; Brewer Dep. 87-88, Pg ID 883). According to Hurtt, this was the first time Brewer informed him that he owed ISI money. (Hurtt Dep. 152, Pg ID 1112). Later that day, Hurtt sent Brewer an email informing her that "[t]he new compensation and travel arrangements that [she] want[ed] [him] to work under ma[de] it very difficult for [him] to afford." (R.46-16, Ex. 17, Pg ID 1151). He requested that he "continue to do the same job under the same compensation agreement" in place before he left for FMLA. (*Id.*). Hurtt did not report to work on September 5, 2012. He testified that the new compensation and travel arrangements make it impossible for him to return.[4] (Hurtt Dep., 114, Pg ID 1103). He continued to communicate with Brewer about his need for the $70,000 draw, and spoke with Brewer and others in regarding to a date for his return. (*Id.* 115, Pg ID 1103).

---

[4] Hurtt testified that if he were to resume working, he would have gotten an assignment on the evening of September 5th for travel on September 6th.

On September 18, 2012, Hurtt's attorney sent ISI a letter notifying it that Hurtt would not be returning to work. Hurtt subsequently filed suit against ISI alleging disability discrimination and retaliation under the ADA and the PWDCRA, as well as FMLA interference and retaliation. On January 31, 2014, ISI filed its motion of summary judgment as to Hurtt's claims. ISI argued that no genuine issues of material fact existed because Hurtt voluntarily quit, and that it was not required to accommodate a request for change in work travel schedules. (R. 43, Def.'s Mot. for Summ. J., Pg ID 530). On May 30, 2014, the district court granted ISI's motion, finding that Hurtt failed to show that he suffered an adverse employment action or engaged in protected activity. Hurtt filed this timely appeal.

## II. DISCUSSION

### A. Standard of Review

We review a district court's grant of a motion for summary judgment *de novo*. *Baggs v. Eagle–Picher Indus., Inc.*, 957 F.2d 268, 271 (6th Cir. 1992). Summary judgment "is appropriate only where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."" *Whitfield v. Tennessee*, 639 F.3d 253, 258 (6th Cir. 2011) (quoting Fed. R. Civ. P. 56(c)). Additionally, summary judgment is appropriate "'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Id.* (citation omitted). "[A]t the summary judgment stage[,] the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In evaluating this appeal, "[t]his court does not weigh the evidence, evaluate the credibility of witnesses, or substitute its

judgment for that of the jury." *Arban v. W. Publ'g Corp.*, 345 F.3d 390, 400 (6th Cir. 2003).

Rather, "[t]he court must draw all reasonable inferences in favor of the nonmoving party."

*Shreve v. Franklin Cnty., Ohio*, 743 F.3d 126, 132 (6th Cir. 2014).

### B. Disability Discrimination under the ADA and PWDCRA[5]

The ADA prohibits discrimination against a qualified individual "on the basis of

disability" in employment decisions. 42 U.S.C. § 12112(a). Without direct evidence of

disability discrimination, claims brought under the ADA and PWDCRA are evaluated under the

*McDonnell Douglas* burden-shifting approach.[6] *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444,

453 (6th Cir. 2004); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under

the *McDonnell Douglas* approach, the plaintiff carries the initial burden of establishing a prima

facie case of discrimination. *Whitfield*, 639 F.3d at 259. To establish a prima facie case under

the ADA, the plaintiff must show that "1) he or she is disabled; 2) otherwise qualified for the

position, with or without reasonable accommodation; 3) suffered an adverse employment

decision; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) the

position remained open while the employer sought other applicants or the disabled individual

was replaced." *Id.* (internal quotation marks omitted). An adverse employment action is "a

materially adverse change in the terms of [the employee's] employment." *Kocsis v. Multi-Care

Mgmt., Inc.*, 97 F.3d 876, 885 (6th Cir. 1996). Once the plaintiff establishes this prima facie

case, the burden then shifts to the defendant to provide a "legitimate, nondiscriminatory reason"

for the adverse action. *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1184-85 (6th Cir. 1996),

---

[5] The district court analyzed Hurtt's claims for disability discrimination claims under the ADA and PWDCRA together. Because the ADA and PWDCRA substantially mirror each other, "resolution of [the] plaintiff's ADA claim will generally, though not always, resolve the plaintiff's PWDCRA claim." *Cotter v. Ajilon Servs., Inc.*, 287 F.3d 593, 597 (6th Cir. 2002), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312 (6th Cir. 2012). Neither party disputes that resolution of Hurtt's ADA claim would resolve his PWDCRA claim. Accordingly, we analyze Hurtt's ADA and PWDCRA claims together.

[6] Hurtt does not dispute the district court's application of the indirect evidence prima facie case.

*abrogated on other grounds by Lewis* 681 F.3d 312. "If the employer offers a legitimate reason for its action that is unrelated to the employee's disability, the plaintiff will bear the burden of establishing that the proffered reason is a pretext for unlawful discrimination." *Id.* at 1185-86.

As an initial matter, we address the use of a constructive discharge claim as a means to show an adverse employment action. In obvious contradiction to Sixth Circuit precedent, the district court improperly held that "a plaintiff cannot use a claim of constructive discharge to establish an adverse employment action." (R. 50, Order, Pg ID 1225). As support for this proposition, the district court cited *Regan v. Faurecia Auto. Seating, Inc.*, 679 F.3d 475, 480-81 (6th Cir. 2012). But *Regan* does not stand for this broad assertion. In *Regan*, the plaintiff alleged that her resignation following her employer's denial of her work schedule shift request constituted a constructive discharge. *Id.* at 481. The plaintiff asserted that the constructive discharge constituted an adverse employment action, which would establish a prima facie case for gender discrimination. *Id.* This Court found that the plaintiff had not "put forth evidence showing that [her employer] 'deliberately created intolerable working conditions, or that there was any intention that the [new work schedule] was designed to force [plaintiff] to quit," as required to show a constructive discharge. *Id.* at 482. As such, this Court found that plaintiff could not "use a claim of constructive discharge to establish an adverse employment action for purposes of demonstrating [*her*] gender discrimination." *Id.* (emphasis added).

The outcome in *Regan* was based the facts of that case. It did not hold, as a matter of law, that the use of a constructive discharge to establish an adverse employment action was impermissible or contrary to Sixth Circuit precedent. Indeed, this Court has repeatedly held to the contrary. *See Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1109-10 (6th Cir. 2008) (reversing summary judgment on plaintiff's ADA constructive discharge claim); *Saroli v.*

8

*Automation & Modular Components, Inc.*, 405 F.3d 446, 451 (6th Cir. 2005) (recognizing plaintiff's claim of a constructive discharge as an adverse employment action); *Smith v. Henderson*, 376 F.3d 529, 533 (6th Cir. 2004) (analyzing whether plaintiff suffered an adverse employment action via her claim of a constructive discharge); *Logan v. Denny's, Inc.*, 259 F.3d 558, 568 (6th Cir. 2001) ("Plaintiff may establish an adverse employment action by demonstrating that she was constructively discharged."). Thus, although already well established, we hold once more today that a plaintiff may use a constructive discharge claim to show that he or she has suffered an adverse employment action.

In reiterating that a plaintiff may use a constructive discharge to satisfy the adverse employment action requirement, we must now determine whether Hurtt made a showing sufficient to establish the existence of an adverse employment action (i.e., a constructive discharge), to survive a motion for summary judgment.[7] To demonstrate a constructive discharge, the plaintiff must show that (1) the employer deliberately created intolerable working conditions, as perceived by a reasonable person; (2) the employer did so with the intention of forcing the employee to quit; and (3) the employee actually quit. *Savage v. Gee*, 665 F.3d 732, 739 (6th Cir. 2012). There is no dispute that Hurtt quit, satisfying the third prong of the prima facie case. The issue rests with the first two prongs.

In determining whether the first prong is met, we have held that "[w]hether a reasonable person would have [felt] compelled to resign depends on the facts of each case[,]" but we consider several factors, including but not limited to, "reduction in salary" and "badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation." *Id.* (*quoting Logan,* 259 F.3d at 569). Drawing all inferences in favor of Hurtt, the record shows

---

[7] Although ISI argued below that Hurtt could not show that he was disabled or that ISI knew or had reason to know of Hurt's disability, the district court's opinion does not address these two arguments. Therefore, we do not consider these two arguments on appeal.

that:  (1) Hurtt's $70,000 draw was terminated; (2) he was placed on a commission-only pay scale, made retroactive to September 1, resulting in an approximately $22,000 deficit owed to ISI; and (3) Hurtt's prepaid expenses were terminated.  Considering these facts, we find that a reasonable person in Hurtt's situation would have found these working conditions intolerable enough to compel resignation.

Further, in analyzing the second prong, we have held that "a complete failure to accommodate, in the face of repeated requests, might suffice as evidence to show the deliberateness necessary for constructive discharge."  *Talley*, 542 F.3d at 1109 (internal quotation marks and citation omitted).  Hurtt testified in his deposition that he repeatedly requested an accommodation of eight hours of sleep per night during his travel due to his documented medical needs.  (Hurtt Dep., 88-89, 143, 147, 211-12, Pg ID 1096-97, 1110-1111, 1127).  And the record shows that ISI failed to accommodate, or even discuss with Hurtt any resolution to his request.  Additionally, Hurtt claims that he made it clear to Brewer that he would not be able to survive on the commission-only pay.  Hurtt testified in his deposition that he informed Brewer that without his guaranteed draw he would not be able to afford working at ISI.  Indeed, Hurtt argues that he was only able to return to ISI because he received the guaranteed draw.  Assuming that Hurtt was denied a reasonable accommodation and that his draw was wrongfully terminated, a jury could reasonably infer that ISI knew that Hurtt's working conditions would become so intolerable as force Hurtt to quit.

The district court's analysis of Hurtt's disability discrimination claims was cursory at best.  It determined that Hurtt could not show that he suffered an adverse employment action, and presumably a constructive discharge, because (1) he did not report to work on September 5, 2012 (the date his psychotherapist released him to return to work); and (2) ISI did not interfere

with Hurtt's leave on September 4, 2012. It is not clear from the district court's order why Hurtt's failure to report to work on September 5, and ISI's lack of interference with Hurtt's leave, would belie his claim of a constructive discharge. It appears the district court attempted to rely on these two facts to conclude that Hurtt had not suffered an adverse employment action, but rather, voluntarily quit when he failed to show up for work on September 5. But these facts alone are not fatal to Hurtt's claim. Indeed, evidence in the record shows that Hurtt was still employed by ISI after September 5—after his draw was revoked. The record also shows that ISI processed Hurtt's FMLA leave request through September 10, and this paperwork was submitted to Dr. Sharnowski on September 10. (R. 47-10, Pl.'s FMLA Packet, Ex. 12). And, a September 11 email to Mr. Hurtt from an employee in the Employee Benefits department inquired as to Hurtt's intentions of returning to his schedule. Moreover, Brewer testified in her deposition that she had numerous conversations with Hurtt after September 5, in an effort to figure out a date for him to return to ISI. (R. 43-15, Brewer Dep. 95, Pg ID 768). Finally, on September 18, Hurtt's attorney sent ISI a letter notifying ISI that Hurtt would not be returning to work. (R. 43-13, Sept. 18 Roumel Letter, Pg ID 730). Jon Andes, ISI's Director of Human Resources, testified that he considered September 18 to be Hurtt's resignation date and coded Hurtt's last employment date as such. (R. 46-2, Andes Dep. 75-76, Pg ID 854). Accordingly, the conclusion that Hurtt voluntarily quit on September 5 is hardly undisputed. Quite the contrary, the evidence is sufficient to raise a genuine issue of material fact as to Hurtt's disability discrimination claim.

Furthermore, there is a genuine issue as to the classification of Hurtt's draw. Hurtt asserts that the draw was "guaranteed" and "forgivable," meaning that if Hurtt made commission income above $70,000, he would keep the difference, but if he made less than $70,000, he would not have to repay the $70,000. ISI disputes that the draw was "forgivable." Instead, ISI asserts

that Hurtt's draw was "negotiated as, and always intended to be, a draw against Hurtt's earned commissions, which could be reviewed and changed by ISI." Appellee's Br. 15. The classification of Hurtt's draw creates a genuine issue of material fact because it is germane in assessing Hurtt's claim of a constructive discharge—if the draw was "guaranteed" as Hurtt contends, termination of the draw could support his claim of a constructive discharge.

Viewed in the light most favorable to Hurtt, we find that Hurtt has identified genuine issues of material fact relevant to whether he suffered an adverse employment action. Accordingly, the court erred in granting summary judgment to ISI on Hurtt's disability discrimination claims.

### C. Retaliation Claims under the ADA and PWDCRA

In dismissing Hurtt's retaliation claims, the district court again relied on its conclusion that Hurtt had not shown that he suffered an adverse employment action. (R. 50, Order, Pg ID 1227). The district court also determined that Hurtt failed to show that he engaged in any alleged ADA protected activity. (Id. at 1227-28).

Under the ADA's retaliation provision, it is unlawful to "discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). To establish a prima facie case of retaliation under the ADA and PWDCRA, the plaintiff must show that (1) he engaged in activity protected by the [ADA]; (2) the defendant knew of this exercise of plaintiff's protected rights; (3) the defendant subsequently took an employment action adverse to plaintiff or subjected the plaintiff to severe or pervasive retaliatory harassment; and (4) there was causal connection between the protected activity and the adverse employment action. *Steward v. New*

12

*Chrysler*, 415 F. App'x 632, 643-44 (6th Cir. 2011); *Parker v. Daimlerchrysler Corp.*, No. 245066, 2004 WL 1103968, at *3 (Mich. Ct. App. May 18, 2004) (listing elements of the prima facie case for retaliation under the PWDCRA). "If the plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to establish a legitimate, nondiscriminatory reason for the adverse employment action." *Penny v. United Parcel Serv.*, 128 F.3d 408, 417 (6th Cir. 1997). The plaintiff bears the burden of proving that the defendant's "proffered reason for the action was merely a pretext for discrimination." *Id.* (citation omitted).

We have held that requests for accommodation are protected acts. *See A.C. ex rel. J.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 698 (6th Cir. 2013) ("Both this circuit and most others agree that requests for accommodation are protected acts."). Hurtt argues that he engaged in protected activity when he requested a reasonable accommodation and when he took FMLA leave. The requests Hurtt points to are: (1) numerous verbal requests for a four-day work week with eight hours per night in a hotel room; (2) Dr. Littles' March 5 documentation; (3) submission of Dr. Sharnowski's September 1 letter; and (4) Hurtt's submission of FMLA leave on September 4. ISI counters that these acts and documents did not "reasonably apprise ISI of Hurtt's alleged disability." (Appellee Br. at 38). But, the pertinent inquiry here is not whether Hurtt proved he had a disability under the ADA, or whether ISI had specific knowledge of Hurtt's alleged disability, but rather, whether Hurtt showed a good-faith request for reasonable accommodations. *See Baker v. Windsor Republic Doors*, 414 F. App'x 764, 777 n.8 (6th Cir. 2011) ("[T]he protected act is the showing of a good-faith request for reasonable accommodations."); *see also Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 502 (3rd Cir. 1997) ("An individual who is adjudged not to be a 'qualified individual with a disability' may still pursue a retaliation claim under the ADA."). We hold that he did.

As a whole, these acts are sufficient, good-faith requests for accommodations. Hurtt's verbal requests initially notified ISI that he sought sleep accommodations during his travels. And while Dr. Littles' document did not explicitly request an accommodation, it specifically corroborated Hurtt's verbal requests that he be given sufficient time to sleep during his travels to accommodate his medical conditions. Furthermore, Dr. Sharnowski's letter and Hurtt's FMLA leave request notified ISI that Hurtt sought accommodation in the form of time off from work. Accordingly, we conclude that Hurtt has put forth sufficient evidence to show that he engaged in protected activity as required under a claim for retaliation under the ADA.

We also find that Hurtt adduced sufficient evidence to show that he suffered an adverse employment action to withstand summary judgment. "To be adverse, a retaliatory action must be enough to dissuade a reasonable person from engaging in the protected activity. . . ." *Shelby Cnty.*, 711 F.3d at 698 (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, (2006)). As stated above, Hurtt testified and produced evidence that he suffered an adverse employment action through his constructive discharge, particularly, the termination of his draw, placement on commission-only pay resulting in an immediate indebtedness to ISI of approximately $22,000.00, and termination of pre-paid travel expenses. Applying the summary judgment standard, a reasonable jury could find that these actions would dissuade a reasonable person from engaging in protected activity.

Viewing the facts and drawing all inferences in the light most favorable to Hurtt, we conclude that the district court erred in granting summary judgment to ISI on Hurtt's retaliation claims.

### D. FMLA Interference and FMLA Retaliation

Hurtt also asserted a claim for FMLA interference and FMLA retaliation against ISI. The district court failed to address Hurtt's FMLA retaliation claim. It dismissed Hurtt's FMLA interference claim by finding that Hurtt was unable to show an adverse employment action. (R.50, Opinion, Pg ID 1229). The district court, in reaching this conclusion, erroneously applied the standard used for a FMLA retaliation claim in analyzing Hurtt's FMLA interference claim.[8] (*Id.*). Because the district court did not rule on Hurtt's FMLA retaliation claim, it is not properly before us for review. Accordingly, we now review only Hurtt's FMLA interference claim.

There are two distinct theories of recovery on FMLA claims: the "entitlement" or "interference" theory, and the "retaliation" or "discrimination" theory. *Arban*, 345 F.3d at 400-01 (6th Cir. 2003). Under the "interference" theory, it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided [by this Act]." 29 U.S.C. § 2615(a)(1). To succeed on a claim for FMLA interference, the plaintiff must show that:

> (1) he was an eligible employee; (2) the defendant was an employer as defined under the FMLA; (3) the employee was entitled to leave under the FMLA; (4) the employee gave the employer notice of his intention to take leave; and (5) the employer denied the employee FMLA benefits to which he was entitled.

*Walton*, 424 F.3d at 485 (6th Cir. 2005) (citation omitted). The last prong is the crux of Hurtt's claim. While "[t]he [ultimate] issue is simply whether the employer provided its employee the

---

[8] Citing *Stubl v. T.A. Sys., Inc.*, 984 F. Supp. 1075, 1090 (E.D. Mich. 1997), the district court stated:
> A plaintiff must establish a prima facie case under the FMLA by showing:
>    1) he/she engaged in an activity protected by the FMLA;
>    2) that the exercise of his/her protected rights was known to defendant;
>    3) that defendant thereafter took an employment action adverse to the plaintiff; and
>    4) that there was a causal connection between the protected activity and the adverse employment action.

(R. 50, Order, Pg ID 1229). This is the prima facie case of FMLA retaliation, not FMLA interference. *Compare Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005) (stating the elements for a prima facie case of FMLA interference), *with Stubl*, 984 F. Supp. At 1090 (stating the elements for a prima facie case of FMLA retaliation).

entitlements set forth in the FMLA," *Edgar v. JAC Products, Inc.*, 443 F.3d 501, 507 (6th Cir. 2006), we also have stated that "'interfering with' the exercise of an employee's rights under the FMLA includes 'discouraging an employee from using [FMLA] leave.'" *Arban*, 345 F.3d at 402 (quoting 29 C.F.R. § 825.220(b)).

Contrary to ISI's assertions, the fact that ISI did not literally interfere with Hurtt's FMLA leave (i.e., by denying it, requesting he report to work, or complete work-related tasks) does not impede Hurtt's claim of FMLA interference. By engaging in an act that would discourage Hurtt from using his FMLA leave, ISI could be liable under a claim for FMLA interference. Here, Hurtt contends that ISI discouraged him from using his FMLA leave by terminating his draw. The evidence suggests that on September 5, after Hurtt submitted his FMLA leave request, ISI: (1) terminated his salary and placed him on a commission-only pay scale; (2) backdated the commission pay, resulting in a deficit owed to ISI; and (3) terminated pre-payment of Hurtt's travel expenses. When viewed in the light most favorable to Hurtt, these facts create a triable issue of FMLA interference. Accordingly, the district court's dismissal of Hurtt's FMLA interference claim was in error.

### III.    CONCLUSION

For the above stated reasons, we **REVERSE** and **REMAND** all of Hurtt's claims for proceedings consistent with this opinion.