NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0312n.06

**Case No. 16-6678**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jun 07, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| MICHELLE T. BRUCE, M.D., | ) | |
| | ) | |
| *Plaintiff-Appellant*, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE MIDDLE |
| MEHARRY MEDICAL COLLEGE, | ) | DISTRICT OF TENNESSEE |
| | ) | |
| *Defendant-Appellee*. | ) | |
| | ) | |
| | ) | O P I N I O N |

BEFORE:    COLE, Chief Judge; GIBBONS and ROGERS, Circuit Judges.

COLE, Chief Judge.   Michelle Bruce ended her tenure at Meharry Medical College ("Meharry") in 2014.   She subsequently sued Meharry for gender discrimination, creating a hostile work environment, and retaliation.   The district court granted summary judgment to Meharry on each claim.   We affirm the district court's judgment because Bruce has failed to provide evidence to support a prima facie case for any of her claims.

**I. BACKGROUND**

In 2005, Bruce, who specializes in occupational medicine, began working at Meharry in the Division of Occupational Medicine within the Department of Family and Community Medicine.   Bruce worked in that department until 2008 during which she had teaching, clinical, and administrative responsibilities.   In 2008 she moved to the Department of Internal Medicine,

where she remained until her resignation from Meharry in 2014. While in the Department of Internal Medicine Bruce was responsible for student and employee health services, continued to have teaching responsibilities, and had additional administrative responsibilities. Those administrative responsibilities required Bruce to participate in college-wide committees, such as the safety committee, which included Dr. Bernard Ray, who was in charge of facilities.

Bruce recounts that Ray was dismissive of her views at these meetings. Specifically Bruce claims that Ray "would make belittling comments after [she] made a statement in a meeting." (Deposition of Michelle Bruce, R. 25-1, PageID 132.) He would also make noises of exasperation when Bruce spoke. At one point, another person at the meeting directed Ray to refrain from making such comments to Bruce.

Bruce also interacted with Ray after a flood in the building which housed her clinic. She found the building unsuitable even after removal of the water, because the facility remained wet and moldy and she felt that the carpet needed to be replaced. Ray coordinated the clean-up, questioned Bruce's opinions on the subject, and forced her and her clinic to move back into the building before she believed it was habitable.

At a benefits fair on August 22, 2013, Ray told Marian Morgan, a nurse practitioner, and others that he wanted a one-on-one physical examination with Bruce. Morgan felt that the comment "meant something sexual" and told Bruce about it. (Dep. of Marian Morgan, R. 25-2, PageID 210.) On August 28, 2013, Bruce sent an email to Meharry's compliance hotline to report the comment. She never received a response and did not follow up. Bruce also specifically testified at her deposition that she did not tell Dr. Duane Smoot, her supervisor, about Ray's comments. Smoot confirms that he did not know about Ray's comment or Bruce's complaint to the compliance hotline.

On November 12, 2013, Smoot asked Bruce to become a primary-care provider at Antioch, an off-site, primary clinic. She declined but said that on November 18, 2013, Smoot informed her that the Antioch assignment was mandatory. Bruce declined again and never reported for work at Antioch. Smoot asked three other physicians to work at Antioch, two male and one female. Both male physicians also expressed hesitation, but one of them, Dr. Darryl Jordan, ultimately became the primary-care physician at Antioch. Smoot said the other male physician preferred not to work Antioch, but Smoot considers him available to work there if necessary.

Bruce sent a letter of resignation to Smoot on March 3, 2014. Bruce then filed a charge with the Equal Employment Opportunity Commission ("EEOC") and received a right-to-sue letter. This suit followed. Bruce raised claims for gender discrimination, hostile work environment, and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII").

Meharry moved for summary judgment, which the district court granted on each claim.

## II. ANALYSIS

We review a summary judgment determination de novo. *Carl v. Muskegon Cty.*, 763 F.3d 592, 595 (6th Cir. 2014). Summary judgment is proper if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Courts consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "[T]he mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

### A. Gender Discrimination

Bruce argues that Ray's disrespectful and dismissive comments during meetings, his disagreement with her opinion about clean-up after the flood, and Smoot's ordering her to work at Antioch establish a prima facie case of gender discrimination. Title VII's anti-discrimination provision makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). "[D]iscrimination claims under Title VII can be proven by direct or circumstantial evidence." *Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 648–49 (6th Cir. 2012) (citations omitted). Circumstantial evidence allows the factfinder to draw a reasonable inference that discrimination occurred. *Id.* at 649.

We apply the *McDonnell Douglas* burden-shifting analysis where a plaintiff attempts to use circumstantial evidence to prove a discrimination claim where, as here, there is no direct evidence. *Id.* at 653. To establish a prima facie case under *McDonnell Douglas*, a plaintiff must present evidence that (1) she is a member of a protected class; (2) she was qualified for the job and satisfactorily performed it; (3) she suffered an adverse employment action; and (4) others, similarly situated and outside the protected class, were treated differently. *See id.*; *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

Bruce fails to establish a prima facie case of gender discrimination because there is no evidence that she suffered an adverse employment action or that others, outside the protected class, were treated differently.

Bruce argues that she suffered an adverse employment action when Smoot told her she had to work at Antioch. An adverse employment action "is an action by the employer that

constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Regan v. Faurecia Auto. Seating, Inc.*, 679 F.3d 475, 481 (6th Cir. 2012) (citation omitted). Bruce argues that because her work at Antioch would not use her skills as an occupational medicine specialist and make it impossible for her to complete all of her administrative work, forcing her to work there constitutes an adverse employment action. However, Bruce concedes that she never worked at Antioch. And she presented no evidence of retaliation or any repercussions for refusing to work there. Therefore, she fails *McDonnell Douglas*'s third prong because she suffered no adverse employment action.

Bruce also fails to make a prima facie case of gender discrimination because she provided no evidence that others, outside the protected class, were treated differently. Bruce argues that Meharry treated male doctors differently by allowing them to decline working at Antioch while she was forced to work there. However, Bruce never worked at Antioch, while a male doctor, who had previously expressed hesitation about working at Antioch, performed primary-care responsibilities there in 2016. In addition, the other male doctor who expressed hesitation at working at Antioch has not worked at Antioch, but Smoot considers him available to do so. The evidence simply does not support Bruce's assertion that male doctors were treated differently. Accordingly, *McDonnell Douglas*'s fourth prong is not met.

## B. Hostile Work Environment Claim

To establish a prima facie case for a hostile work environment, Bruce must establish that (1) she is a member of a protected class, (2) "she was subjected to harassment, either through words or actions, based on sex, (3) the harassment had the effect of unreasonably interfering with her work performance and creating an objectively intimidating, hostile, or offensive work

environment[,] and (4) there exists some basis for liability on the part of the employer." *Grace v. USCAR*, 521 F.3d 655, 678 (6th Cir. 2008).

Bruce fails to establish a prima facie case for a hostile work environment because she failed to provide sufficient evidence that any alleged harassment directed at her created an objectively intimidating or hostile work environment. She argues that Ray's comments and behavior toward her from 2008 to 2014, along with his allegedly sexually suggestive innuendo about a physical examination, constitute an objectively intimidating, hostile or offensive work environment. "The Supreme Court has provided a non-exhaustive list of factors to consider when deciding whether a hostile work environment exists including: 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* (*quoting Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

Here, the comments and expressions of exasperation occurred largely at committee meetings. Further, the comments were not physically threatening and there is no evidence that the comments affected Bruce's work performance. While offensive in nature, these sporadic comments are simply not severe or pervasive enough to establish a prima facie case for a hostile work environment claim. *See id.* at 679 (holding that referring to a female colleague as "dancing girl" or "call girl," ignoring her except to comment on her appearance, and another female employee's quitting because of the same person was not sufficient to establish a prima facie case of hostile work environment because the "offensive utterances, do not rise to the level required by the Supreme Court's definition of a hostile work environment").

## C. Retaliation Claim

To establish a prima facie case of retaliation Bruce must show that (1) "she engaged in a protected activity under Title VII," (2) the exercise of protected rights was known by her employer, (3) the employer took adverse employment action against her, and (4) "there was a causal connection between the adverse employment action and the protected activity." *Taylor v. Geithner*, 703 F.3d 328, 336 (6th Cir. 2013).

Bruce failed to provide evidence that she met the second prong of a prima facie retaliation case, because there is no evidence that Smoot knew she had filed a complaint against Ray. Bruce argues that her email to the compliance hotline constituted protected activity and that Smoot directed her to work at the clinic in retaliation for that email. Smoot, in his affidavit, stated that he had no knowledge of Bruce's email. Bruce acknowledges that she did not tell Smoot about the incident.

However, Bruce argues that because some employees at Meharry were aware of Ray's conduct, Smoot did not need to have actual knowledge to establish the existence of a prima facie case of retaliation. However, Bruce must show, either through direct or circumstantial evidence that Smoot, her supervisor, knew of her protected activity. *See Mulhall v. Ashcroft*, 287 F.3d 543, 552–54 (6th Cir. 2002) (holding that the plaintiff had to provide direct or circumstantial evidence that the supervisors who took the adverse action against the plaintiff knew about the protected activity prior to taking that action). Bruce has not produced either direct or circumstantial evidence of Smoot's knowledge of Ray's conduct or the email to the compliance hotline; therefore she fails to establish a prima facie case of retaliation.

## III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.